J-A10014-14

2014 PA Super 176

SHERI A. MORGAN, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
DANIEL T. MORGAN, :
:
Appellant : No. 1463 MDA 2013

Appeal from the Order entered July 11, 2013,
Court of Common Pleas, Franklin County,
Domestic Relations at No. 2009-557

SHERI A. MORGAN, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellant :
:
v. :
:
DANIEL T. MORGAN, :
:
Appellee : No. 1525 MDA 2013

Appeal from the Order entered July 11, 2013,
Court of Common Pleas, Franklin County,
Domestic Relations at No. 2009-557

BEFORE: DONOHUE, ALLEN and STABILE, JJ.

OPINION BY DONOHUE, J.: **FILED AUGUST 21, 2014**

Daniel T. Morgan ("Father") appeals from the July 11, 2013 order of

court regarding his child support obligation for C.M., his un-emancipated

adult son with Sheri A. Morgan ("Mother").[1] Mother has filed a cross-appeal,

---

[1] C.M. is severely autistic and cannot live on his own. In his appeal, Father
does not contest his obligation to provide support for C.M., only the amount
of support determined by the trial court.

challenging the trial court's assignment of an earning capacity to her and the amount of thereof. Following our review, we affirm the trial court with regard to the issue raised in Father's appeal and reverse in part as to the issues raised by Mother in her cross-appeal.

In 2003, the parties were divorced in Maryland. In conjunction with the divorce, the parties entered into a property settlement agreement ("PSA"), which provided, in relevant part, that Father would pay Mother alimony and child support.[2] The PSA provided that Father's alimony obligation would remain fixed until July 1, 2007, after which either party could seek to modify the amount of the obligation. The PSA was incorporated into the divorce decree.

On May 3, 2007, Father registered the Maryland divorce decree and PSA in Franklin County. Almost immediately thereafter he filed a petition seeking to reduce his alimony obligation. In response, Mother filed a petition seeking to increase Father's alimony obligation. These filings initiated approximately four years of proceedings regarding Father's alimony obligation, including an appeal to this Court, our remand to the trial court for further evidentiary proceedings, and then a subsequent appeal.

In 2011, as the second appeal from the alimony proceedings was pending before this Court, Mother filed a support action because Father told

---

[2] The parties are the parents of three children. At the time of the proceedings underlying this appeal, all of the children had attained the age of majority.

her that he was going to cease paying child support for C.M. As part of the ensuing support proceedings, Father's employer submitted income information to the trial court that revealed that Father had been lying about his income and submitting falsified documents, including federal tax returns, to the trial court in connection with the alimony action. It was later discovered that the tax returns Father produced in the support action – after his deceit in connection with the alimony proceedings had been discovered – were also falsified. The discovery of Father's fraud on the court led to a protracted discovery period. As a result, the parties did not appear before the trial court for a hearing on Mother's support petition until July 2012, with a second day of hearings held in September 2012. The trial court subsequently entered an order setting Father's child support obligation and providing that it would apply retroactively to May 3, 2007 (the date Father registered the parties' divorce decree and PSA in Franklin County) and requiring Father to pay $128,526 of Mother's counsel fees. In making the support award, the trial court assigned Mother an income of $92,500[3] and rejected Mother's claim for an upward deviation of 25% beyond the amount prescribed by the Child Support Guidelines because of the minimal custodial time Father has with C.M. On July 11, 2013, the trial court amended this order to provide, *inter alia*, that Mother's earning capacity should be applied

_____

[3] The trial court assessed an earning capacity of $80,500 against Mother and then added $12,000 this figure, which represents the $1000 per month Mother's father provides to her.

retroactively to May 3, 2007. Father timely appealed and Mother timely filed her cross-appeal.

Our scope of review when considering an appeal from a child support order is as follows:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***McClain v. McClain***, 872 A.2d 856, 860 (Pa. Super. 2005) (internal citations omitted).

We begin with the issue presented by Father in his appeal, which he states as follows: "If an agreement to pay child support is incorporated, but not merged, into a divorce decree, is the agreement a contract?" Appellant's Brief at 6. It is Father's contention that because his child support obligation was arrived at through an agreement, rather than support proceedings, and because this agreement was incorporated, rather than merged, into the divorce decree, the trial court lacked jurisdiction to modify his support obligation. *Id.* at 22-25.

Father is correct that in our law, martial settlement agreements that are merged into a divorce decree are treated differently than agreements that are incorporated into the divorce decree. *See Jones v. Jones*, 651 A.2d 157, 158 (Pa. Super. 1994) (holding that an agreement that merges into the divorce decree is enforceable as a court order, but an agreement incorporated into the decree "survives as an enforceable contract [and] is governed by the law of contracts"). However, this distinction does not apply to the provisions of such agreements that concern matters of child support or custody. The Divorce Code specifically provides that regardless of whether an agreement between parties is merged or incorporated into the divorce decree, "[a] provision of an agreement regarding child support, visitation or custody shall be subject to modification by the court upon a showing of changed circumstances." 23 Pa.C.S.A. § 3105(b); *see also McClain*, 872 A.2d at 862-63. The Pennsylvania Supreme Court explained the policy behind this statute when it explained that "[p]arties to a divorce action may bargain between themselves and structure their agreement as best serves their interests. They have no power, however, to bargain away the rights of their children[.]" *Knorr v. Knorr*, 588 A.2d 503, 505 (Pa. 1991). Thus, regardless of the fact that the parties' PSA was incorporated into their divorce decree, the trial court had jurisdiction to modify the

provision addressing Father's child support obligation.[4]  There is no merit to Father's claim.[5]

We now turn our attention to the issues Mother raises in her cross-appeal.  She first argues that the trial court erred by assigning her an earning capacity because C.M. requires "round-the-clock" care and the cost of a caretaker for C.M. roughly would be equivalent to the income she could obtain based upon her current qualifications and experience.  Appellee's Brief at 36-42.

Pennsylvania Rule of Civil Procedure 1910.16-2(d)(4), addressing earning capacities, provides as follows:

> If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. ***Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity.*** In order for an earning capacity to be

---

[4]  Section 3105 of the Divorce Code is titled "Effect of Agreement Between Parties."  In his argument, Father acknowledges subsection (a), and argues that it does not apply to agreements for child support. Appellant's Brief at 26-27. Father completely fails to address subsection (b), the salient provision, in his argument.

[5]  As this appeal was pending, Father filed an Application for Remand, in which he presented the same argument regarding the trial court's jurisdiction and posited that because the trial court lacked jurisdiction to modify his support obligation, there was no valid order underlying his appeal.  ***See*** Application for Remand, 10/1/13. As we have found that the trial court did have jurisdiction over this matter, we deny Father's application.

assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4) (emphasis added).

The trial court rejected Mother's argument that the cost of a caretaker would consume her income base, explaining as follows:

This [c]ourt recognizes Mother's argument that any income she did receive from employment would be consumed by the need for an alternative caregiver for [C.M.] However, the [c]ourt notes that this argument is entirely speculative. Until Mother actually gets a job, this [c]ourt has no way of knowing how many hours that job would require Mother to be in the office or how much time Mother would spend commuting to and from work. The [c]ourt also does not have sufficient evidence as to how Mother currently handles care for [C.M.] when she is unavailable to provide such care due to her extensive work with Democratic politics and when she is completing work toward her Ph.D. outside the home. Therefore, this [c]ourt cannot accurately determine for how many hours Mother would need to hire an alternative caregiver in the case of her return to the workforce. The [c]ourt also notes its concern with the reasonableness of Mother's expectations for an alternative caregiver … . This issue is better reserved for a future proceeding in which the issue is not merely speculation. Mother may be entitled to compensation or credit for her expense in providing alternate care for [C.M.], but that issue is not currently before this [c]ourt and thus this [c]ourt will

> not deduct any amount from Mother's earning
> capacity for that purpose.

Trial Court Opinion, 6/10/13, at 17.

We see in this explanation that the trial court considered child care costs as required by Pa.R.C.P. 1910.16-2(d)(4), but concluded that no adjustment to Mother's earning capacity was warranted because there was no credible evidence as to the cost or frequency of need for a caregiver. There is no requirement in the Rule that the trial court must adjust the earning capacity to reflect the "[a]ge, education, training, health, work experience, earnings history and child care responsibilities" of the party to which the earning capacity is being assigned; the Rule requires only that the trial court consider these factors. *See* Pa.R.C.P. 1910-16.2(d)(4). The trial court did so in this instance, and it rejected the evidence Mother put forth on this issue. "[T]he trial court, as the finder of fact, is entitled to weigh the evidence and assess the credibility of witnesses." *Krankowski v. O'Neil*, 928 A.2d 284, 287 (Pa. Super. 2007) (citation omitted). "A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure Governing Actions for Support, Pa.R.C.P. 1910.1 *et seq.*, or abused its discretion in applying these Rules." *Id.* at 286. As recounted above, the trial court properly considered the requirements of Rule 1910.16-2(d), and so we may not disturb its determination.

In her second issue, Mother argues that the trial court erred in calculating her earning capacity to be $80,500 per year. Appellee's Brief at 47. The trial court arrived at the $80,500 figure based upon the testimony of Husband's vocational expert, with whom Wife met in February 2012. The trial court stated,

> At the hearing on this matter … Brian Bierley, a vocational expert, testified regarding his vocational assessment of Mother, based on an interview he had with her and her educational background. Mr. Bierley testified that given Mother's age, work experience [and] education, he would consider her to be extremely employable. He testified that he had researched employment opportunities that Mother would be qualified for, based on having a Master's degree. Among these opportunities were openings for a research coordinator, resource coordinator, and nurse analyst. The salaries for these available jobs ranged from $64,000 to $97,000. The [c]ourt believes Mr. Bierley testified credibly and will rely on his research to calculate Mother's earning capacity. The average range of these salaries is $80,500 and therefore, this [c]ourt will use this figure in calculating Mother's earning capacity.

Trial Court Opinion, 6/10/13, at 17-18 (citations to notes of testimony omitted).

We have reviewed the record and must conclude that it does not support the trial court's determination. The notes of testimony reflect that Mr. Bierley testified that Mother's earning capacity ranged from $60,000 to $97,000, and in that regard, the record supports the trial court's findings. *See* N.T., 7/2/12, at 100-01. However, Mr. Bierley further testified that at

the time of the hearing, Mother could expect to earn approximately $60,000 to $65,000, and only after a few years in the workforce would she be able to earn the higher end of the salary range he projected. *Id.* at 100, 102, 104. There is no factual support for the trial court's conclusion that Mother, who had been out of the workforce for twelve years at the time of the hearing, had an immediate earning capacity of $80,500. The trial court abused its discretion in this regard, and so we vacate this portion of its order and remand for the recalculation of Mother's earning capacity. *See Glover v. Severino*, 946 A.2d 710, 712 (Pa. Super. 2008) ("An abuse of discretion exists if … there is insufficient evidence to sustain the order.").

Mother also argues that the trial court erred in applying her earning capacity retroactively to the date she filed the support complaint, May 3, 2007. Mother contends that until she obtained her Master's degree in 2008, she lacked the educational credentials to qualify for the jobs, and therefore, the salaries, to which Mr. Bierley testified. Appellee's Brief at 50-52. However, the record reveals that Mr. Bierley testified that Mother could expect to earn within the same range (between $65,000 and $90,000) for jobs with her RN degree, and that such salaries were not dependent on Mother's completion of her Master's degree or PhD. N.T., 7/2/12, at 102-03. He attributed this to the "extreme need for RNs." *Id.* at 116. Accordingly, we find no merit to this argument.

In her final issue, Mother complains that the trial court erred by not including an upward deviation from the Support Guideline calculation of Father's support obligation because Father has custody of C.M. less than five percent of the time. Appellee's Brief at 52. Mother's argument is based on a Comment to Pa.R.C.P. 1910.16-4. Rule 1910.16-4 sets forth a formula for the calculation of a child support obligation and includes a subsection providing that this obligation may be reduced when the child or children are in the custody of the obligor for at least 40 percent of the time. Pa.R.C.P. 1910.16-4(c). The 2010 Comment to this Rule states that an "[u]pward deviation should be considered in cases in which the obligor has little or no contact with the children." Pa.R.C.P. 1910-16-4, Comment (2010). Mother urges that because in this case, Father has virtually no contact with C.M., the trial court erred by not including an upward deviation.

The trial court denied Mother's request for an upward deviation upon finding that Mother has denied Father access to C.M. and that Father cannot turn to the courts for access to his son because C.M. is over 18 years of age, and therefore not subject to a custody action. Trial Court Opinion, 6/10/13, at 19-20. We can find no abuse of discretion in this determination. Mother's point that the trial court is penalizing C.M. for Mother's refusal – whether justified or not – to allow Father access to C.M. on perhaps as little as one occasion is well taken. However, the Comment to Rule 1910-16(4) only suggests that upward deviation be considered; it does not require it. In this

particular case, the trial court believed Father's testimony that Mother has not allowed him to see C.M., and it was unwilling to encourage such behavior by Mother by tying a portion of the child support to a drastically reduced custody schedule, over which Mother has complete control. The record supports the trial court's findings regarding Mother's denial of Father's requests to see C.M., *see* N.T., 9/20/12, at 94-95, 120, and our law does not require that an upward deviation must be applied. We therefore find no abuse of discretion by the trial court.

In conclusion, we summarize our disposition of the various matters before us as follows. We deny Father's Application for Remand. We reverse the portion of the trial court's order assigning an earning capacity of $80,500 to Mother and remand for further proceedings with regard to this issue. We affirm the trial court order in all other respects.

Order affirmed in part and reversed in part. Case remanded for further proceedings. Application for remand denied. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/21/2014