J-A13012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TRACY L. EISENMAN-GOMEZ | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| FRANK A. GOMEZ | |
| Appellant | No. 1596 WDA 2014 |

Appeal from the Order August 26, 2014
In the Court of Common Pleas of Washington County
Domestic Relations at No(s): 806 DR 2007

BEFORE:  PANELLA, J., SHOGAN, J. and OTT, J.

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 11, 2015**

Father, Frank A. Gomez, appeals from an order entered August 26, 2014, denying exceptions he raised to the report and recommendation of the Domestic Relations Hearing Officer issued after a hearing on the support modification petition filed in November 2011 by Mother, Tracy L. Eisenman-Gomez. We affirm.

The parties have been involved in divorce and support proceedings since 2007. They have two sons, aged 19 and 16, as of the date of the order. Numerous support and contempt proceedings have occurred over the past 8 years. Relevant to the support and contempt proceedings, and this appeal, is the existence of funds received by Mother from a trust set up by her mother.

Carol A. Eisenman ("Mother's Mother"), a resident of Florida, had established a revocable trust wherein Mother's Mother was the sole trustee and beneficiary. The trust was amended and reinstated on October 17, 2006, and all of Mother's Mother's assets were allegedly transferred to the trust prior to her death. Pursuant to the trust agreement, the residue of the trust estate passed to a trust for the benefit of Mother's Mother's husband and her daughter Tammy. Upon Mr. Eisenman's demise on May 22, 2007, the trust estate was to be divided into four equal shares for Mother's Mother's daughters and distributed outright. Between August 2007 and December 2009, Mother received payments totaling approximately $468,546.36 from the Carol Eisenman trust and $1,848 from a life insurance benefit.

The following facts and procedural history, quoted from the Hearing Officer's report rendered after a hearing on the 2011 modification petition, are relevant to this appeal.

> The parties have previously been before this Hearing Officer on September 23, 2008, May 6, [2009,] June 22, 2009 (when the parties reached an agreement), and January 28, 2010.
>
> Mother originally filed a Complaint for Support for herself and the 2 minor children of the parties on August 22, 2007. On September 24, 2007, the Support Complaint was dismissed by agreement at the support conference as the parties were still living in the same household and the Father had continued to pay for the family's expenses. In spite of the agreement of the parties, Mother filed a demand for a *de novo* hearing. Ultimately, a Consent Order was entered on January 3, 2008, [which] provided that: "Pending further Order of Court, [Father] shall

continue to pay on a timely and regular monthly basis all reasonable household expenses."

Following the entry of the Consent Order, Mother filed a Petition for Contempt and a hearing was held on September 23, 2008. Following the hearing, this Hearing Officer recommended that the Petition for Contempt be dismissed.

By Order dated March 26, 2009, the Honorable John F. DiSalle granted Mother's exceptions and remanded the case for "a determination of what amount in arrears is owed to the Plaintiff from the Defendant for unpaid reasonable household expenses. The defendant shall continue to pay all reasonable household expenses, as stated above, until a monetary Support Order is entered."

On May 6, 2009, the parties reached an agreement wherein Father would pay $775.00 per month for current support and $1.00 per month for arrears for the support of the parties' two children based upon the stipulation of the parties that Mother's gross annual income was $25,000.00 and Father's gross annual income was $50,000.00.

On October 13, 2009, Mother filed a Petition for Modification and a *de novo* hearing was held on January 28, 2010.[1] This Hearing Officer used the previously stipulated incomes of the parties, but added mother's income from a trust established by her grandfather in determining the support obligation. Father's gross annual income remained $50,000.00. The support obligation changed primarily as a result of mother's assumption of custody of one of the parties' children, which had previously been equally

_____

[1] Mother testified in January 2010 that she had withdrawn money in 2009 from a family trust account which had been established by her grandfather "when she was a little girl" to pay her bills. That is the only trust Mother mentioned in the January 2010 proceeding. She did not mention the existence of the Carol Eisenman Trust, funds she had received from the Carol Eisenman Trust between August 2007 through December 2009, or her receipt of life insurance proceeds. **See** Report of Hearing Officer, filed 4/23/14, at R.R. 609a.

shared. A mortgage deviation also was considered in arriving at the Order.

Mother filed the instant Petition for Modification on November 8, 2011. [She alleged that an increase was needed because the children were getting older and Father left the younger child with Mother most of the time, even though their custody agreement stipulated to a 50/50 shared custody.] Following the mandatory conference on January 4, 2012, [after which the petition was dismissed,] she requested a *de novo* hearing and then filed a new modification petition on July 6, 2012 to add a claim for spousal support.[2]

On March 4, 2013, the Honorable Gary Gilman entered an Order related to cross-motions for sanctions filed by the parties. The Order included a directive (paragraph 7) indicating: "As Mother failed to more timely disclose receipt of $468,546.36, which sum shall be imputed to her as the support master determines."

At the hearing on July 2, 2013, this Hearing Officer ruled that the March 4th Order directed that Mother was to have the sum of $468,546.36 imputed to her. Following that hearing, Mother filed a Motion for Clarification, Father filed a Reply to Motion for Clarification and New Matter [seeking spousal support,] and Mother filed a response. By Order dated October 2, 2013, the Honorable Gary Gilman denied Mother's request that the Hearing Officer "…determine how to treat the $468,546.36 for support purposes… ." Instead, Judge Gilman's Order provided: "Denied. The court directs the parties and the Master to **Mencer v. Ruch**, 928 A.2d 294 (Pa. Super. 2007). Therein, the Superior Court held that distributions from a trust were to be considered as income for child support purposes."

[However,] by Order dated October 23, 2013, Judge Gilman, *sua sponte*, amended [his] October 2, 2013 Order[,] indicating:

> [D]istributions from the trust that mother received might be treated as if it were in the nature of an inheritance and, therefore, should only be used as a

_____

[2] Neither the lower court docket nor the certified record contains a copy of Mother's "new modification petition" allegedly filed on July 6, 2012.

reason for deviating from the support guideline amount as noted in **Humphreys v. DeRoss**[,790 A.2d 281 (Pa. 2002)]. The money received may not necessarily be considered as income for support purposes. Therefore, the hearing officer shall take testimony regarding the source of receipt.

By way of further explanation, the method by which mother received the $468,546.36 is more important when determining its character than the nomenclature. The money may have been a distribution from the trust as a method of transferring wealth instead of through a traditional will in order to avoid certain legal requirements, such as probate. As such, the transfer could also be characterized as a gift, which is also not considered as income. For this reason, the hearing officer should take testimony thereon.

Report of Hearing Officer, filed 4/23/14, at 1-3, Reproduced Record ("RR") 606a- 608a.

The Hearing Officer held further hearings at which Mother's expert witness, a certified public accountant and certified valuation analyst, testified that she could not separate the trust distributions received by Mother into interest income and principal. **See** N.T., 10/15/13, at 77-78. Because of her inability to separate the distributions into principal and interest, the Hearing Officer treated the total sum of the distributions "as an inheritance, a gift[,] or some combination thereof." Report of Hearing Officer, filed 4/23/14, at 4, RR 609a.  He concluded that "[i]n any case, the principal sum is not 'income' for purposes of determining the support obligation.  **See** 23 Pa.C.S. § 4302; Rule 1910.16-2; **Mencer v. Ruch**, 928 A.2d 294 (Pa.Super. 2007)

*Humphreys v. DeRoss*, 790 A.2d 281 (Pa. 2002); and *Maher v. Maher*, 835 A.2d 1281 (Pa. 2003)." *Id*.

Prior to issuing his recommendation, the Hearing Officer noted Mother had received income from various part-time jobs, and concluded that her "actual earnings from employment are substantially below her earning capacity as previously agreed to by the parties. [Thus, f]or purposes of calculating the support obligation, Mother's earning capacity will continue to be $25,000 annually." *Id*. The Hearing Officer noted that "[o]rdinarily, [he] would determine what portion of the [Carol Eisenman trust] distributions were interest and income for purposes of calculating Mother's net monthly income. In the present case, however, there is no dispute such a determination is impossible based upon the evidence at hand." *Id*. at 5, RR 610a. The Hearing Officer calculated Mother's gross annual income to include $25,000 earning capacity; $2,084 interest income; $15,355 in dividend income; capital gains of $4,563; and capital gain distributions of $4,000.[3] He determined that her net monthly income is $3,654.77. After reviewing Father's income from numerous sources, the hearing officer determined that Father's net monthly income is $4,521.77.

_____

[3] The Hearing Officer did not delineate from what source of funds the dividend and interest income derived. He did note that interest from a life insurance policy is income within the meaning of 23 Pa.C.S. § 4302. Report of Hearing Officer, filed 4/13/14, at 5-6, RR 610a-611a.

The Hearing Officer summarized his findings and made his recommendation requiring Husband to pay $988.00 per month for the time between November 8, 2011 until June 6, 2013, after which time Husband was to pay $433.50 per month, plus arrears. This new amount reflected the emancipation of one child and subsequent removal from the support order and the continued shared custody of the younger child.

Father filed exceptions to the Hearing Officer's recommendation. The trial court denied Father's exceptions, and ordered, among other things, the following.

> Based upon the [c]ourt's determination [that Mother's] net monthly income is $3,654.77 and [Father's] net monthly income is $4,521.77, between November 8, 2011 and June 6, 2013, Father shall pay $988.24 per month for current support.
>
> Effective June 7, 2013, [following the eldest child's emancipation, Father] shall pay $500 allocated as $433.50 per month for current support and $66.50 per month for arrears.

Trial Court Order, dated 8/26/14 at 1. The trial court specified that the effective date of the order was November 8, 2011. Father timely appealed to this Court.

Our standard of review of support orders is well-settled. A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure governing actions for support or abused its discretion in applying those rules. *See Morgan v. Morgan*, 99 A.3d 554, 559 (Pa. Super. 2014) (citation omitted). "We will not interfere with the broad discretion afforded the trial court absent an

abuse of discretion or insufficient evidence to sustain the support order." *Id*. (citation omitted).

Father first argues that the trial court erred in its treatment of the $468,546.36 inheritance received by Mother from her mother through a trust. He avers the court should have considered the inheritance as "income" for purposes of child support modification.

The Pennsylvania Rules of Civil Procedure provide support guidelines for the calculation of net income. *See* Pa.R.C.P. 1910.16-2. The term "income" is defined by statutory law and includes an exhaustive list of types of income, including "income from an interest in an estate or trust[.]" 23 Pa.C.S.A. § 4302. Our Supreme Court has held that the corpus of an inheritance from an estate is not "income" because the legislature specifically defined "income" as including "income from an interest in an estate or trust," but did not include the principal of an inheritance or trust. *Humphreys v. DeRoss*, 790 A.2d 281, 284-85 (Pa. 2002). One year later, the same Court held that a mother's inheritance could not be considered when determining her income, but could be considered as an asset when determining whether to deviate from the guidelines. *See Maher v. Maher*, 835 A.2d 1281 (Pa. 2003).

Husband contends that it was Wife's burden of proof to differentiate between principal and interest of the inheritance and thus the court should have ruled in his favor. *See* Appellant's Brief, at 29. "The burden of

demonstrating a material and substantial change rests with the moving party, and the determination of whether such change has occurred in the circumstances of the moving party rests within the trial court's discretion." ***Kimock v. Jones***, 47 A.3d 850, 855 (Pa. Super. 2012).

Here, Mother's request was for an increase in the amount of child support Father was to pay. Thus, her *only* burden was to prove why an increase was warranted. ***See id***. ***See also*** Pa.R.C.P. 1910.19(a).[4] Father, on the other hand, was seeking a decrease in the amount of child support he pays to Mother. We are at a complete loss to see how this would be *Mother's* burden. The current Rules and case law do not explicitly address this issue. However, logic and common sense dictate that Father would bear the burden of proving a substantial change in circumstance in *his* favor.

Father calls to our attention Pa.R.C.P. 1910.19(c), which provides:

> (c) Pursuant to a petition for modification, the trier of fact *may* modify or terminate the existing support order in any appropriate manner based upon the evidence presented without regard to which party filed the petition for modification.

(emphasis added).

In accordance with Rule 1910.19(c), as Father notes, the trial court *could* modify in either party's favor after Mother petitioned for an upward modification. ***See Brickus v. Dent***, 5 A.3d 1281 (Pa. Super. 2010) (holding

_____

[4] Rule 1910.19(a) provides that "A petition for modification … of an existing support order shall specifically aver the material and substantial change in circumstances *upon which the petition is based*[.]" (emphasis added).

that the trial court had the authority to increase father's child support obligation, even though mother did not file a cross-petition seeking an increase in support). The court, however, is not required to do so. Moreover, Rule 1910.19(c) does not change who has the burden of proof in modification proceedings. Here, because Father was the party in Mother's modification hearing seeking a decrease in the support order based upon the trust distributions, he bore the burden of proving the nature of Mother's inheritance payments and their impact on Mother's income. This he did not do. In fact, he submitted no expert testimony or any other evidence to support his request for a change in support based on those payments.

Based on the above discussion, we conclude that the trial court properly exercised its discretion in concluding that the distributions received by Mother were an inheritance not included in the definition of "income" for support purposes. *See* 23 Pa.C.S.A. § 4302.

Father next argues that, even though he did not file his own modification petition, the trial court erred in not deviating from the child support guidelines. In particular, he contends that the significant payments Mother received from the revocable trust warranted a downward deviation.

A trial court has discretion to deviate from the guideline amount in a support case, if the record supports the deviation. *See Silver v. Pinskey*, 981 A.2d 284, 296 (Pa. Super. 2009). In determining whether to deviate from the guidelines, the trier of fact must consider the following factors:

(1) unusual needs and unusual fixed obligations;
(2) other support obligations of the parties;
(3) other income in the household;
(4) ages of the children;
(5) the relative assets and liabilities of the parties;
(6) medical expense not covered by insurance;
(7) standard of living of the parties and their children;
(8) in a spousal support or alimony pendent lite case, the duration of the marriage from the date of marriage to the date of final separation; and
(9) other relevant and appropriate factors, including the best interests of the child or children.

Pa.R.C.P. 1910.16-5(b). "The trier of fact is to consider all the relevant factors in determining whether a deviation is warranted; any one factor is not necessarily determinative." **Suzanne D. v. Stephen W.**, 65 A.3d 965, 972-73 (Pa. Super. 2013) (citation omitted). There is "no legal authority which allows the court to eliminate Father's support obligation, where he can reasonably provide for some of Child's needs." **Ricco v. Novitski**, 874 A.2d 75, 83 (Pa. Super. 2005).[5]

Father avers that the trial court did not sufficiently consider the fifth factor, "relative assets of the parties" in its modification order. He is mistaken. As noted above, both the Hearing Officer and the trial court considered the assets and liabilities of the parties in determining what the

_____

[5] **Ricco** involved a trust in a child's name where the father sought a downward deviation from the guidelines because of that trust. We concluded that "[r]eleasing Father, as the non-custodial parent, from all support obligation to Child permits Father to evade his support obligation through the use of the Trust, even though Father is not the custodian of the assets of the trust." **Id**. at 83.

appropriate support order should be. Moreover, we note that this Court has previously stated:

> Above all, we are mindful of the general principle that a parent's duty to support his minor children is absolute, and the purpose of child support is to promote the children's best interests. The court has no legal authority to eliminate an obligor's support obligation, where the obligor can reasonably provide for some of the children's needs.

***Silver***, 981 A.2d at 296 (citation omitted). Father has made no claim that he cannot afford to pay his child support obligation, or that any change in his circumstances hinders him from doing so. We thus conclude, in accordance with the above case law, that the trial court did not abuse its discretion in applying the child support guidelines.

Father next avers that the trial court erred by imputing an earning capacity of only $25,000 to Mother. Specifically, he contends that it was an abuse of discretion to ignore the Hearing Officer's observation that Mother's income "would certainly be greater" if she had devoted more time to finding work since that earning capacity was originally imputed to her in 2009.

> With respect to earning capacity, Rule 1910.16-2(d)(4) provides:

> If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position.

The Hearing Officer and the trial court chose again to impute to Mother a $25,000 earning capacity after considering the following findings of fact.

> As previously, mother continues to be employed in various part-time positions including teaching Silver Sneakers classes, Senior Aerobics and various odd jobs. More significantly, she was recently hired for a part-time position with the Women's Business Network which pays $1,000.00 per month. The Hearing Officer finds mother continues to be underemployed based upon her health, education and experience. Her actual earnings from employment are substantially below her earning capacity as previously agreed to by the parties. For purposes of calculating the support obligation, mother's earning capacity will continue to be $25,000.00 annually.

Report of Hearing Officer, filed 4/23/14, at R.R. 609a.

Father does not disagree with the factual findings of the court, but simply argues that the trial court did not apply Rule 1910.16-2(d)(4) and thus abused its discretion. However, the rule only requires the court to *consider* the factors of age, education, training, health, work experience, earnings history and child care responsibilities in determining earning capacity. *See Morgan v. Morgan*, 99 A.3d 554, 558 (Pa. Super. 2014); Pa.R.C.P. No. 1910.16-2(d)(4). It does not require the court to deviate in either direction based primarily on any one factor. *See Morgan*, 99 A.3d at 558.

The court considered all the factors required by the rule in determining Mother's earning capacity, including the fact that Mother's college degree is in wildlife husbandry and that she never worked in that field. *See* N.T., RR. at 111a, 161a. The court also considered Mother's testimony in which she

stated that she had worked with Father in his retail businesses until the birth of their second child when she became a stay-at-home mom. *See id*. at 200a-202a. Mother has not been in the work force for many years and has no significant training in any particular field.

Father presented no evidence pertaining to Mother's earning capacity, despite having had substantial time to acquire evidence or hire a vocational expert to testify. He has made no effort to provide any indication of what he believes Mother's earning capacity should be. Rather, he merely relies on the following phrase in the Hearing Officer's report: "[M]other's earning capacity would certainly be greater than $25,000 if she had devoted more time to increasing her earnings rather than promoting a healthy lifestyle." Report of Hearing Officer, filed 4/23/14, at R.R. 614a. The *entire* sentence, however, is as follows: "The Hearing Officer recommends no spousal support award which represents a small deviation from the guideline figure of spousal support because mother's earning capacity would certainly be greater than $25,000 if she had devoted more time to increasing her earnings rather than promoting a healthy lifestyle." *Id*. Father thus fails to mention that the Hearing Officer's speculative conjecture is limited only to its discussion of spousal support, and not earning capacity *per se*. While a husband does not have an unlimited responsibility to provide spousal support if a wife can reasonably provide for herself, a father has a legal responsibility, independent of a mother's responsibility, to provide for his children "where

he can reasonably provide for some of the children's needs." ***Ricco***, 874 A.2d at 83.

The trial court did not abuse its discretion in adopting the Hearing Officer's recommended earning capacity of $25,000 for Mother since that number reflected careful contemplation of all the factors required by Rule 1910.16-2(d)(4).

Father next argues that the trial court erred by failing to provide him with retroactive relief of his arrears to a date prior to the filing of Mother's November 2011, petition because Mother failed to disclose the inheritance from the revocable trust and a life insurance benefit. He is not seeking retroactivity to the date that Mother's most recent petition was filed. Rather, he avers relief should be applied as far back as 2007, when Mother first filed for support.

> Our law on retroactive modification of arrears provides:
>
> No court shall modify or remit any support obligation, on or after the date it is due, except with respect to any period during which there is pending a petition for modification. If a petition for modification was filed, modification may be applied to the period beginning on the date that notice of such petition was given, either directly or through the appropriate agent, to the obligee or, where the obligee was the petitioner, to the obligor.

23 Pa.C.S.A. § 4352(e). Thus, retroactive relief could be applied to the period beginning on the date of notice of Mother's petition for modification. ***See id***.; ***see also Brickus***, *supra* (a non-petitioning party could be granted relief retroactive to the date the petitioning party filed their motion). Section

4352(e) of our Domestic Relations Law explicitly addresses requests for retroactivity to an earlier period as follows.

> [M]odification may be applied to an earlier period if the petitioner was precluded from filing a petition for modification by reason of a significant physical or mental disability, misrepresentation of another party or other compelling reason and if the petitioner, when no longer precluded, promptly filed a petition.

23 Pa. C.S.A. § 4352(e).

The language of the statute is clear and unambiguous that the trial court cannot grant retroactive relief to a date prior to the filing date *unless* (1) the party seeking retroactive relief files a petition for modification and (2) that party demonstrates that they were precluded from filing for a modification. Here, Father never filed a petition for retroactive modification even after learning of Mother's inheritance. As a result, retroactive relief is neither appropriate nor warranted.

Father next argues that the trial court erred in holding that the life insurance proceeds received by Mother did not constitute income for purposes of determining Mother's child support obligation. We disagree.

Generally, child support is calculated based on the parties' monthly income. *See* Pa.R.C.P. 1910.16-2. As noted above, included in the definition of "income" is: "income from life insurance and endowment contracts; … income from an interest in an estate or trust[.]" 23 Pa.C.S.A. §4302. As the trial court here observed, a one-time payout to a life insurance beneficiary is analogous to an inheritance. *See* Trial Court Opinion, dated 11/12/14, at 13,

and discussion, *supra*. Since the legislature plainly did not use the phrase "principal" in the definition of income, and instead specified only "income from…" life insurance or an interest in an estate or trust, it is logical to assume that the legislature did not intend to include the lump sum insurance benefit. **See Humphreys**, 790 A.2d at 284.

Here, the recommendation of the Hearing Officer, which was adopted by the trial court, properly determined that the insurance proceeds of $14,082.30 that Mother received from her deceased mother's policy were not income for purposes of calculating support under Section 4302.[6] Accordingly, we cannot conclude that the trial court abused its discretion in rendering its child support order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/11/2015

_____

[6] The Hearing Officer determined that interest for $1,848.00 that Mother received on the life insurance policy benefit is includable as "income" under Section 4302. **See** Trial Court Opinion, 11/12/14, at 14.