J-A02032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MAUREEN HORESH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DAVID A. GARRISON | |
| Appellee | No. 1946 EDA 2014 |

Appeal from the Order Entered June 11, 2014
In the Court of Common Pleas of Chester County
Domestic Relations at No(s): 00764N2013
PACES NO. 328113980

BEFORE:  PANELLA, J., LAZARUS, J., and WECHT, J.

MEMORANDUM BY PANELLA, J.                    **FILED AUGUST 28, 2015**

Appellant, Maureen Horesh ("Mother"), proceeding *pro se*, seeks review of the trial court's child support order, and challenges the trial court's determination of her earning capacity. We affirm.

Mother and Appellee, David A. Garrison ("Father"), married on October 16, 1993. They have two children, one born in 1998 and the other in 1995. The parties separated in May 2012. The children live with Mother; Father has occasional contact with the children.

Mother has an undergraduate degree in English from the University of Pennsylvania, a certificate in Real Estate Development from New York University, a Six Sigma certification,[1] and a certificate in horticulture.

---

[1] Six Sigma is a set of techniques and tools for process improvement.
*(Footnote Continued Next Page)*

During the marriage, she owned and managed five real estate properties containing many rental units. In addition, Mother was employed full-time throughout the marriage until 2008. Father is an attorney with a solo environmental law practice.

On May 20, 2013, Mother filed a counseled complaint seeking support for herself and the children. On July 1, 2013, the court ordered Father to pay interim child support for $1,184.00 per month, effective June 20, 2013.[2] No support for Mother was ordered. Mother's counsel was allowed to withdraw, and Mother has proceeded *pro se* ever since.

After their son's 18th birthday, the parties stipulated to his emancipation, and the court reduced the interim support order to $542.50 per month effective September 10, 2013. The court set arrears at $1,624.55, and ordered that they be paid in full immediately.

On April 8, 2014, the court held a hearing on Mother's support complaint. The parties' joint 2012 tax return was admitted into evidence. Mother testified that she works 30 to 45 hours per week managing her now seven properties. She further testified that prior to 2008, she earned $60,000 to $100,000 annually in salary, commissions, and bonuses from her employment with GE Health Care and her other sales jobs. Mother did not

_(Footnote Continued)_ _____

[2] The interim support award was based on the court's determination that Mother's monthly net income was $9,353.47 and Father's monthly net income was $10,006.13. Arrears were to be determined later.

provide competent evidence of her 2013 or 2014 financial records, despite a court order to do so. She also failed to provide adequate documentation of the expenses of operating and maintaining her real estate holdings.[3]

Denise Cordes, a vocational expert who had interviewed Mother at defense counsel's request, testified extensively with regard to Mother's earning capacity. She stated that Mother had informed her that, throughout the marriage and up to 2008, she had worked in various full-time positions, including as a mortgage lender, a rental agent, an agent for GE Fleet, and a sales person of medical equipment for GE Healthcare. While at GE, Mother obtained her Six Sigma certification. Mother managed five rental properties at the same time that she was employed full-time. Ms. Cordes also testified that GE Healthcare terminated Mother's employment at the end of 2007. With her severance payment, Mother purchased two more rental properties and then decided to take time off from working full-time to tend to her house and children. She attended horticulture school and became certified as a horticulturalist. At the time of the interview, Mother was working part-time and seasonally as a horticulture assistant at a garden center, earning $17.00 per hour at maximum 32 hours per week.[4] Ms. Cordes opined that with

_____

[3] Mother did submit a log in which she recorded her activities and time allegedly spent in managing her properties.

[4] Mother informed the court in April 2014 that she had resigned from her horticulture job, allegedly to manage her properties and tend to the children's needs. *See* Appellant's Brief at 12.

Mother's extensive background in mortgage lending, sales, and real estate management, and considering her break in relevant employment, her earning capacity was in the median range of $32,870 to $47,250 annually. *See* Notes of Testimony ("N.T.") Hearing, 4/8/14, at 64; Vocational Analysis, dated 4/6/14, at 5-6.

On June 11, 2014, the court concluded that Mother has an earning capacity of $47,250 per year, in addition to the income she derives from her rental properties. *See* Trial Court Opinion, dated 6/11/14, at 7. Using the parties' joint 2012 Federal tax return as a "baseline," the court opined that Mother's gross income in 2013 was $192,532, and projected it to be $216,157.00 in 2014. *Id*., at 3. After consideration of Father's profit and loss statements for 2013 and the parties' 2012 tax return, the court concluded that Father's gross income was $139,307.02, in 2013, and projected that it would be the same for 2014. The court also determined that an upward deviation of 30% from the support guidelines was warranted due to Father's lack of custodial time with the children. Thus, applying the child support guidelines, Pa.R.C.P. 1910.16-2 and 1910.16-3, the court ordered Father to pay $1,484.74/month ($1,142.11 + 30%) for two children for the period May 20, 2013 to September 9, 2013, and $1,056.38 per month ($812.60 + 30%) for the period September 20, 2013 to December 31, 2013. The court ordered Father to pay $1,030.72 per month ($792.86 + 30%) for the support of one child, effective January 1, 2014, with "[a]rrears, if any, to be paid at the rate of $50.00 per month." Trial Court Order, entered

6/11/14. The court denied Mother's request for spousal support. After the denial of her post-hearing motion, Mother appealed to this Court.[5]

Mother raises the following questions for our resolution.

a. Whether the lower court abused its discretion and committed an error of law in calculating the mother's earning capacity?

b. Whether the lower court abused its discretion and committed an error in imputing additional income to the mother contrary to the overwhelming evidence before the court?

Appellant's Brief at 7-8.

Our standard of review of support orders is well-settled. A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure governing actions for support or abused its discretion in applying those rules. **See Morgan v. Morgan**, 99 A.3d 554, 559 (Pa. Super. 2014), *appeal denied*, 113 A.3d 280 (Pa. 2015). "We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order." **Id**. (citation omitted).

---

[5] After Mother filed an appeal, this Court issued an order in which we concluded that, in accordance with Pa.R.A.P. 341(b)(1), only issues regarding the child support portion of the order were immediately appealable because a divorce decree has not been entered and all economic claims have not been resolved. **See** Order, 8/20/14 (citing **Fried v. Fried**, 501 A.2d 211 (Pa. 1985) (holding that issues are reviewable after entry of a divorce decree and resoluation of all economic issues); **Hrinkevich v. Hrinkevich**, 676 A.2d 237 (Pa. Super. 1996) (holding that notwithstanding a pending divorce action, child support orders are immediately reviewable)).

"Both parents have an equal obligation to support their children in accordance with the capacity and ability of each to do so." ***Sutliff v. Sutliff***, 489 A.2d 764, 771 (1985) (citations omitted).

> [A] person's support obligation is determined primarily by the parties' actual financial resources and their earning capacity. Although a person's actual earnings usually reflect his earning capacity, where there is a divergence, the obligation is determined more by earning capacity than actual earnings. Earning capacity is defined as the amount that a person realistically could earn under the circumstances, considering his age, health, mental and physical condition, training, and earnings history.

***Baehr v. Baehr***, 889 A.2d 1240, 1244-45 (Pa.Super. 2005 (citation omitted). ***See also*** Pa.R.C.P. 1910.16-2(d)(4) (setting forth factors for consideration so that the trier of fact may impute an income equal to the party's earning capacity if it determines that the party has willfully failed to obtain or maintain appropriate employment). "Where a party assumes a lower paying job or willfully fails to obtain appropriate employment, the support obligation is determined by his [or her] assessed earning capacity." ***Baehr***, 889 A.2d at 1245 (citation omitted).

Mother avers that the trial court abused its discretion in determining her annual earning capacity to be $47,250, in addition to the income she receives from her rental properties. She argues that because she manages seven properties containing 55 rental units, she does not have time to obtain and hold a full-time job, manage the home, and care for the children. ***See*** Appellant's Brief at 24.

The trial court made the following observations with respect to Mother's earning capacity.

> The objective evidence is that [Mother] was gainfully employed outside the marital residence during 1995-2008[.] … She had child care and household duties to meet in addition to the work requirements of her employers. Additionally, she found/made time to manage her rental properties. Clearly, [Mother] is an accomplished multi-tasker.
>
> Now that she is separated, has an emancipated son and a 16-year-old daughter, she asserts that she should not be required to revert to her former multi-tasking self. In fact, she recently quit her part-time job on the ground that she could not work and meet her other obligations to the household, etc.
>
> [Mother] was evaluated by vocational specialist, Ms. Cordes. When afforded the opportunity to reveal her current involvement in leasing and managing real estate, she failed to do so. Accordingly, Ms. Cordes's report … was flawed as she envisioned [Mother] as needing some degree of job retooling. Once Ms. Cordes was made aware of [Mother's] extensive background, she opined that the wage estimates she had given were wrong and should be much higher.
>
> Pursuant to Pa.R.C.P. 1910.16-2(d)(4), I find that [Mother] has additional earning capacity *at least equal* to the median amount set by Ms. Cordes, to wit, $47,250.00. [citing Vocational Analysis, dated April 5, 2014, at 6]. I so conclude as:
>
> a) [Mother] is 50 years old, appears to be in good health and functions at a high level intellectually;
>
> b) She has specialized and hands on training in real estate development;
>
> c) She has hands on experience in leasing and managing real estate;
>
> d) She has a history of full[-]time employment while overseeing her personal real estate investments and the needs of her household and children;

> e) Her 16[-]year[-]old daughter does not, in my view, present any child care issues that preclude full[-]time employment; [and]
>
> f) She has chosen not to work solely for personal reasons.
>
> I see no reason why [Mother] should exert less effort in maximizing her income for the benefit of her children post separation than she did pre separation.

Trial Court Opinion, entered 6/11/14 at 3-4.

Our review of the certified record indicates that the trial court did not abuse its discretion in setting Mother's earning capacity at $47,250 annually. The court considered the factors of age, education, training, health, work experience, earnings history, and child care responsibilities as set forth in Pa.R.C.P. 1910-16-2(d)(4). Based on Mother's prior experience, the court rejected Mother's testimony and other evidence that she could not work at a full-time job as long as she was managing her rental properties. Because the trial court properly considered the requirements of Rule 1910.16-2(d), we may not disturb its determination. **See Morgan**, 99 A.3d at 559 (declining to reverse a support order because the trial court had properly consider the requirements of Rule 1910.1 et seq.).[6]

_____

[6] In its Rule 1925(a) opinion, the trial court stated that arrears had not been set at the time of its June 11, 2014 order and requested that we remand so that it could adjust the payment of arrears from $50.00 per month to "a more reasonable recoupment amount." Trial Court Opinion, entered 8/11/14, at 2. Mother identified the issue of arrears in her Rule 1925(b) statement, **see** Rule 1915(b) statement, 8/5/14, at ¶ 3 but did not raise this issue in her appellate brief. **See** Appellant's Brief at 7 n.1 ("Mother will not

*(Footnote Continued Next Page)*

Order affirmed.


Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/28/2015

---

*(Footnote Continued)* ————————

presently address this issue in this brief….”). Mother is under the impression that the trial court's statement about the arrears in its opinion resolves the issue in her favor. ***See id***. That is a mistaken impression. ***See***, ***e.g.***, ***Durning v. Balent/Kurdilla***, 19 A.3d 1125, 1127 n.2 (Pa. Super. 2011) (finding issues raised in Rule 1925(b) statement, but not raised in appellate brief waived); ***Branch Banking and Trust v. Gesiorski***, 904 A.2d 939, 942 (Pa. Super. 2006) (“As our supreme court has explained, any layperson choosing to represent herself in a legal proceeding must, to some reasonable extent, assume the risk that her lack of expertise and legal training will prove her undoing.”). As Mother did not raise an issue about arrears, nor even present any argument on this issue, it is not before us. We therefore cannot comply with the trial court's request.