J-A16041-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| STEVEN G. STEPANOVICH, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| CRYSTAL L. STEPANOVICH, | : | |
| | : | |
| Appellee | : | No. 1324 WDA 2015 |

Appeal from the Order July 29, 2015,
in the Court of Common Pleas of Butler County,
Domestic Relations, at No(s):  Case No 37706, Pacses 278115067

BEFORE:  SHOGAN, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.:          **FILED AUGUST 23, 2016**

Steven G. Stepanovich (Father) appeals from the support order which, *inter alia*, set the earning capacity of Crystal L. Stepanovich (Mother) at $18,000 annually and her support obligation at $430.00 per month, including arrears.  Upon review, we affirm.

Father and Mother are the parents of one child (Child), born in April 2004, who is the subject of the instant support action.[1]  Father filed a complaint for child support on December 24, 2014, which was thereafter amended to add spousal support.  On February 20, 2015, following a conference, an interim order of court[2] was filed setting Mother's spousal and

---

[1] The couple was divorced by decree filed September 18, 2015.

[2] Although the February 20, 2015 order is marked as "final," we observe that it is an interim order pursuant to Pa.R.C.P. 1910.11(f) ("If an agreement for support is not reached at the conference, the court, without hearing the

---

* Retired Senior Judge assigned to the Superior Court.

child support obligation at a total of $1,649.00 per month, including arrears. Critical to this appeal, these figures were based on Mother's earning capacity of $83,103.12 as a teacher, a position she held for approximately 19 years and from which it was determined that she voluntarily resigned on January 21, 2015.

Mother thereafter filed for *de novo* review, and a hearing was held on July 15, 2015. Following the hearing, the court entered an order setting Mother's earning capacity at $18,000 annually and her child support obligation at $430.00 per month, including arrears.[3]

Father thereafter timely filed a notice of appeal on August 26, 2015. The lower court ordered Father to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and one was filed. The trial court issued its opinion pursuant to Pa.R.A.P. 1925(a) on October 14, 2015.

On appeal, Father presents the following issues for our review.

I.    Whether the court's finding that [Mother's] earning capacity of $18,000.00 is supported by the evidence and Pennsylvania law?

II.    Whether the court erred in failing to find [Mother's] earning capacity to be $80,000.00 as a health and physical education teacher because she voluntarily quit her position?

---

parties, shall enter an interim order calculated in accordance with the guidelines ….").

[3] Because Father's income was determined to be higher than Mother's earning capacity, no spousal support was awarded.

Father's Brief at 8 (unnecessary capitalization and suggested answers omitted).

As both of Father's issues challenge the trial court's decision to set Mother's earning capacity at $18,000, we address them and the arguments he offers in support thereof together.

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. In addition, we note that the duty to support one's child is absolute, and the purpose of child support is to promote the child's best interests.

***Morgan v. Morgan***, 99 A.3d 554, 556-57 (Pa. Super. 2014) (citation omitted).

With respect to determinations of child support obligations, this Court has further observed:

> As is provided in Pa.R.C.P. 1910.16-2(d)(1), generally there is no change to the support obligation following a voluntary reduction of income:
>
> > (1) *Voluntary Reduction of Income.* When either party voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause, there generally will be no effect on the support obligation.
>
> Pa.R.C.P. 1910.16–2(d)(1). However, when a parent has not voluntarily reduced his income to circumvent his support

- 3 -

> obligation the court can consider reducing the parent's child support obligation.

***Smedley v. Lowman***, 2 A.3d 1226, 1228 (Pa. Super. 2010) (some internal quotation marks and citations omitted). Moreover, with respect to a party's earning capacity, Pa.R.C.P. 1910.16-2(d)(4) provides as follows.

> If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

At the hearing held on July 15, 2015, the only testimony offered was that of Mother. Mother stated that she currently worked full-time[4] at Springfield Grille as a server and had been working there for approximately four weeks. N.T., 7/15/2015, at 7-8, 20. She stated that she had been working for $7.25 an hour during her training, but the hourly rate going forward was $2.83 plus tips. ***Id.*** at 7-9.

---

[4] Mother explained that she was considered full time though she did not work forty hours a week, as servers do not get that time. N.T., 7/15/2015, at 8.

Mother further testified that she filed for divorce from husband on September 26, 2014, at which time she was employed by Pittsburgh Public Schools for the Pittsburgh Board of Education and had an income of $80,000.[5] *Id.* at 10. Mother also stated that on December 12, 2014, she attempted suicide.[6] *Id.* She stated that she attempted suicide because her marriage had "been extremely bad for 13 years, and even worse in the last two years;" her mother was diagnosed with stage 4 ovarian cancer; she was "falsely accused of having an inappropriate relationship with a tenth grade boy" at her job; and she had been depressed and anxious for years. *Id.* at 11. Mother related that she was suspended from work with pay on December 11, 2014, the day before she attempted suicide, and she resigned her employment around January 19 or 20. *Id.* at 11-13. Mother stated that she had been going to therapy for over a year and was on medication. *Id.* at 12.

With respect to her attempts at finding employment other than through Springfield Grille, Mother testified that she applied to different temp agencies and that she interviewed at a place where she would "make fighting chairs and cabinets for high-end yachts" but was not offered the position. *Id.* at 13-14. She also said that she had worked for two different

---

[5] Mother explained that if she worked summer school, she would earn approximately $3,000 more. N.T., 7/15/2015, at 17-18.

[6] Mother testified that this was also the day she and Father separated. N.T., 7/15/2015, at 20.

life insurance agencies, and that she had been hired by UPS, but had yet to go through training. *Id.* at 14-16. Mother stated that "[m]ost of the jobs in Butler County are labor related and/or packaging or Walmart, Target kind of things" and that she had applied to all of those positions. *Id.* at 23. Mother also stated that she has "applied to over a hundred jobs online," including positions to fill mail order prescriptions, approximately 25 customer service positions, and has gone to interviews to sell knives. *Id.* at 24. She represented that "if [she] could get an interview [she] tried to do it." *Id.* Mother stated that she was capable of working and that it was her understanding that she had made all but two of her support payments through using money out of her life insurance. *Id.* at 25.

Mother confirmed that she quit to make a change, further explaining that she was mentally and physically sick from the stress and "needed to get healthy." *Id.* at 13, 19. She indicated that she had been going to counseling for depression and anxiety for years. *Id.* at 19. With respect to leaving her employment as a teacher, she stated that she did not ask to take a leave of absence, transfer to another school, or ask for a job in administration. *Id.* at 20. Mother admitted that such requests did not cross her mind, but also stated that she was really sick and that her job was very stressful such that she knew she could not do it anymore.[7] *Id.* at 24-25. She did, however, apply for a teaching position at another district and confirmed that she was

---

[7] Mother stated that she did not seek a job as an administrator because she was not qualified for such a position. N.T., 7/15/2015, at 20.

still an accredited certified teacher. *Id.* at 20-22. She said that she had looked at online teaching and at writing curriculum for schools but has been unable to find any positions. *Id.* at 23. She also stated that, with respect to tutoring, she was certified to teach health and physical education, and tutors are not hired for those subjects. *Id.* Mother also explained that she had been contacted by a substitute service for school districts in Butler County, but she had to pay for new clearances and did not have the money to pay for them. *Id.* at 16-17.

In support of its decision, the trial court provided the following reasoning:

> For the purpose of calculating the support obligation, [Mother's] earning capacity was set at $18,000.00 annual gross which is based upon her current employment at a full-time status. The [c]ourt determined that [Mother] left her employment prior to the separation and she did not leave this employment for the purpose of not paying support or reducing her ability to pay support. Also, the [c]ourt determined that [Mother] was credible in consideration of her testimony, along with her physical appearance and demeanor, with regards to her ability to work in the previous employment and in her search for new employment. The [c]ourt further takes notice of the custody proceedings under FC 90649 of 2014 where [Mother] was found not capable of having unsupervised custody of [C]hild. Therefore, it was determined that she would be unable to supervise other children in a classroom setting and cannot currently obtain and maintain this type of employment. However, although [Mother's] ability to work is limited at this time, she is still responsible to improve her employability while continuing with her treatment.

Order, 7/31/2015, at 3.

Father essentially argues that the trial court's determination is improper because the circumstances surrounding Mother's voluntary quitting and her inadequate efforts to mitigate income loss do not justify setting her earning capacity at $18,000. Father's Brief at 18-21. Father further contends that the trial court erred in (1) taking notice of the separate custody proceeding, where Mother was found to be incapable of having unsupervised custody with Child, to determine that she was unable to supervise other children in a classroom setting and thus work as a teacher; (2) failing to find Mother's testimony that she applied for teaching positions constituted an admission of her ability to work as a teacher; and (3) finding that Mother terminated her employment prior to her and Father's separation. *Id.* at 14-17.

We conclude that Father's arguments do not entitle him to relief for the simple reason that they ignore the trial court's credibility determinations. In this regard, we

> must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand.
>
> When the trial court sits as fact finder, the weight to be assigned the testimony of the witnesses is within its exclusive province, as are credibility determinations, [and] the court is free to choose to believe all, part, or none of the evidence presented. [T]his Court is not free to usurp the trial court's duty as the finder of fact.

*Mackay v. Mackay*, 984 A.2d 529, 533 (Pa. Super. 2009) (internal quotation marks and citations omitted).

Here, the trial court concluded that Mother "did not leave … employment for the purpose of not paying support or reducing her ability to pay support" and, in doing so, observed that, *inter alia*, "[Mother] was credible in consideration of her testimony, along with her physical appearance and demeanor, with regards to her ability to work in the previous employment and in her search for new employment."  Order, 7/31/15, at 3.  Thus, it is clear that the trial court set Mother's earning capacity at $18,000 based on its observations of Mother at the hearing, as well as the testimony that she offered, which the trial court credited.  That testimony as summarized above, particularly as it relates to Mother's continued struggle with depression and anxiety; her attempt at suicide, which was spurred in part by an unfounded allegation that she had an inappropriate relationship with a student at her former place of employment;[8] and her efforts to find other employment supports the trial

---

[8] To the extent Father argues that Mother did not produce any medical evidence regarding her mental health issues, we note that no such evidence was necessary.  *See S.K.C. v. J.L.C.*, 94 A.3d 402, 414 (Pa. Super. 2014) (rejecting, in child custody dispute case, the father's challenge to the trial court's finding that domestic violence was present in the relationship on the basis that no complaints to the police or other supporting evidence was presented, concluding that "[a]lthough the trial court may have taken the lack of a report into consideration when determining if [the m]other's testimony was credible, the lack of a report did not preclude the trial court from determining that there was a history of domestic violence").

court's determinations. Thus, we do not disturb those determinations on appeal. ***See Mackay***, 984 A.2d at 533. No relief is due.

By way of further analysis, we reach our conclusion even assuming *arguendo* the trial court improperly relied on the custody matter determination, as the court's findings are otherwise supported by the record herein as demonstrated above, and those findings adequately support its decision. Moreover, with respect to Appellant's argument that Mother's testimony establishes that she can work as a teacher, we observe that "[t]his Court has defined a person's earning capacity not as an amount which the person could theoretically earn, but as that amount which the person could **realistically** earn under the circumstances, considering his or her age, health, mental and physical condition and training." ***Mackay***, 984 A.2d at 537 (emphasis in original) (internal quotation marks omitted). Thus, notwithstanding such testimony, the trial court acted within its discretion in declining to set Mother's earning capacity commensurate to her teaching salary based on what it determined she could realistically earn under the circumstances. Finally, we reject Father's argument that the trial court erred in finding that Mother voluntarily quit before the parties separated based on the trial court's well-reasoned analysis:

> Father mischaracterizes the [c]ourt's finding. The [c]ourt's actual finding was that Mother "left her employment prior to the separation." The parties agree that the date of their separation was December 12, 2014. Mother was suspended with pay from

her employment with Pittsburgh Public Schools on the previous day, December 11, 2014. Mother did not return to work with Pittsburgh Public Schools, and resigned in January of 2015. Thus, Mother did leave her employment before the parties separated, but did not officially resign until after separation. Any discrepancy between when Mother "left" and when Mother "resigned" does not constitute prejudicial error, as the [c]ourt found that Mother did not leave her employment for the purpose of avoiding child support payments, regardless of whether her official resignation occurred before or after the parties' separation.

Trial Court Opinion, 10/14/2015, at 2-3.

Because Father has failed to establish that he is entitled to relief, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2016