J-A22031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| HADASSAH L. FEINBERG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| MIKHAIL G. KURMANOV | : | |
| | : | |
| Appellee | : | No. 45 MDA 2021 |

Appeal from the Order Entered December 4, 2020
In the Court of Common Pleas of Dauphin County
Civil Division at No(s): 01615-DR-15

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED NOVEMBER 23, 2021**

Appellant, Hadassah L. Feinberg ("Mother"), appeals *pro se* from the order entered in the Dauphin County Court of Common Pleas, which denied her request to modify a child support order following a *de novo* hearing. We affirm.

In its opinion, the trial court set forth the relevant facts and procedural history of this case as follows:

> [Appellee, Mikhail G. Kurmanov ("Father"), and] Mother are the parents of two children, A.F. and E.A.F., ages five and four, respectively. In addition, Mother has another child, E.F., age seven, from another relationship and currently provides emergency foster care for an infant. All four children live with Mother. The proceeding at issue on Mother's appeal involves child support for A.F. only. This [c]ourt takes judicial notice of the most recent custody order involving A.F., entered May 21, 2019, under which terms the parties agreed Mother would be granted sole legal and physical custody of A.F.[1] Father's paternity of E.A.F. was only established on December 10, 2020, following genetic

testing, and this support obligation for E.A.F. is not before this [c]ourt.[2]

[1] M.K. v. H.F., No. 2016 CV 4462 CU.

[2] Mother filed a petition on October 7, 2020 seeking child support from Father for E.A.F. After Father's paternity was established, the matter proceeded to an office conference and was resolved with the entry of a child support order for both children on January 4, 2021 (discussed below).

Mother initially sought child support from Father for A.F. in November 2015 and a support order was later entered May 10, 2016, directing Father pay $496.58 per month plus $19 per month toward arrears. On September 1, 2020, Father filed a petition with the Domestic Relations Section seeking to decrease child support owed for A.F. Following an office conference, a *per curiam* Order was issued October 7, 2020, as recommended by the conference officer and effective as of September 1, 2020, directing that Father pay child support of $588 per month plus $75 per month on arrears. At the *de novo* hearing, the Domestic Relations director explained the calculation of support under the Support Guidelines:

At the conference [M]other provided a physician's verification form indicating that she was unable to work full time due to medical issues. Mother is working part time. She earns $125 a day and she works about two days a week and that would be a weekly gross of $250 or a monthly net of $958.35. She does receive medical assistance for herself and her other children. And is receiving food stamps in the amount of about $457 a month. She also stated that she has a daycare cost of $76 per week and a registration fee.

Father, we had pay stubs for him. He earns $13 an hour, 40 hours a week. That put him at a monthly net of $1,826.06. The combined incomes of the parents came to $2,784.41 or $2800 on the Support Guidelines grid for one child which is $658 per month. Father's obligation toward just basic support at 65.58

percent would be a support order of $431.52. However, when we average in the daycare, that is what changes this order. Daycare is $76…a week. For a year that is $3,952. Then we had $150 registration fee for a total of $4,102. After the federal tax credit it's down to $3,052. Monthly $254.33 and Father's obligation would be $166.79. So we have basic support of $431.52 and daycare of $166.79 for a total of $598.31.

So the conference officer recommended the $598 a month plus $75 on arrears for one child effective 9/1/20. [Mother] to provide medical coverage for the child. The uninsured after the first $250 annually is 65 percent [F]ather, 35 percent by [M]other. And the parties shall share the cost of any agreed-upon extracurricular activities for the child in proportion to their respective income.

Father also raised an issue concerning the SSI that his child A.F. is receiving. Mother does receive $783 per month which was verified by the Department of Public Welfare for help in supporting this child. That is not factored into [M]other's income or to [F]ather's income or to reduce the amount of support that the noncustodial parent would be required to pay under the Support Guidelines. It helps for the expenses for the child.

(N.T.[, 12/2/20, at] 3-5)[.] Mother filed a timely request for *de novo* review from the October 7, 2020 child support order.

A *de novo* hearing was held before this [c]ourt on December 2, 2020, at which both Mother and Father testified, both as self-represented parties. The relevant record from the *de novo* hearing was as follows: Mother's primary complaint at the hearing was that Father had voluntarily and intentionally reduced his income from $21.64 [an hour] plus commissions to $13 an hour by taking a lower paying job. She claimed he should be held to his prior income and earning capacity. (N.T. [at] 6, 9)[.]

Mother also sought an upward deviation of support because

- 3 -

Father was not exercising any custody of A.F. and noting that she had spent over $7,000 on [A.F.'s] disabilities (primarily autism), has total debt exceeding $80,000, and has her own disabilities and health problems which limit her ability to work. (N.T. [at] 7-8, 22)[.] Mother claimed that Father lives with either his mother or his significant other and thus can split expenses with them. She also asserted that Father drives an Audi that he leases for $700 to $800 per month. (N.T. [at] 8)[.] Mother complained about Father's failure to make support payments between March and July 2020 and asserted that he is in contempt for failure to do so. (N.T. [at] 7, 10)[.]

With regard to employment, the record reflected that Mother is a substitute part-time teacher earning $125 per day and working about two days per week. (N.T. [at] 3, 9)[.] Though Mother testified that she was earning far less than $250 per week, she agreed at the hearing that "I am okay with that amount." (N.T. [at] 10-11)[.] She also testified that upon agreeing to provide foster care, she understood that the infant would not be eligible for childcare with most providers until six weeks of age, thus limiting her ability to work during this time. (N.T. [at] 19)[.]

Father testified that he had worked in sales for a long time before he was let go by his employer in March 2020, directly as a result of the Covid pandemic. (N.T. [at] 15)[.] He received unemployment compensation shortly thereafter. (N.T. [at] 15)[.] Father claimed he looked for other jobs through the summer of 2020 but was unable to find any. He thus decided to become a union electrician after studying for two months and passing an aptitude test. (N.T. [at] 15)[.] Though his starting income is low, he testified that the hourly rate would increase every six months and that in five years he should be making $80,000 per year. (N.T. [at] 17)[.]

Father claimed Mother has sufficient income and resources including SSI, food stamps and free health care for A.F., child support for her oldest child E.F., and a foster care stipend. (N.T. [at] 16)[.] Father suggested that a foster care agency would not give a newborn to a person who is "broke." (N.T. [at] 16, 18-19)[.] Father also testified that he wants to see his son but that Mother has made it difficult

- 4 -

for him. (N.T. [at] 16)[.]

Father cited his own financial and health problems, noting that he has irritable bowel syndrome and spends over $3,000 on his prescriptions, without the benefit of free health care. (N.T. [at] 17)[.] The Domestic Relations Section director confirmed that Father submitted documentation at the officer conference reflecting his diagnosis and out-of-pocket expenses. (N.T. [at] 18)[.]

At the conclusion of the hearing, this [c]ourt denied Mother the relief requested in her demand for a *de novo* hearing, and re-affirmed the contents of the October 7, 2020 Order, with the exception that the childcare cost portion of the award would be recalculated and reduced to accurately reflect Father's proportionate share of Mother's childcare payments only attributable to A.F., as discussed at the hearing. (**See** N.T. [at] 12-14, 20-21)[.] As such, the final recalculated Order was issued December 2, 2020, directing that Father pay $506.43 per month plus $50 per month on arrears, for the support of A.F., effective September 1, 2020.

On December 23, 2020, Mother filed a timely appeal from the [c]ourt's December 2, 2020 Order. On December 30, 2020, while her appeal was pending, Mother filed a document titled "Notice of Perjury and Contempt." In it, she asserted that Father should be held in contempt for falsely testifying at the *de novo* hearing. In support, she submitted almost one hundred pages of exhibits "proving the false testimony to be false and intentional." She also requested reconsideration of the December 2, 2020 Order. This [c]ourt denied her request for reconsideration.

In the meantime, on January 4, 2020, following a Domestic Relations Section office conference on Mother's petition seeking support for both A.F. and E.A.F., a *per curiam* Order was entered, as recommended by the conference officer and effective October 7, 2020, increasing Father's child support to $772 per month plus $77 per month on arrears.[3] As such, the child support Order entered in this case from which Mother appealed, is effective only from September 1, 2020 to October 6, 2020.

³ The parties were assigned the same incomes to calculate support for this Order as were used to calculate the Order from which Mother appeals.

(Trial Court Opinion, filed February 12, 2021, at 1-4).

Mother raises the following issues for our review:

Did the trial court err in limiting the right established in U.S. Code § 1623, by accepting false unsubstantiated statements from [Father] which is an abuse of discretion and erroneous, regarding other support order, domestic violence, inconsistent statements, shirking responsibility, knowingly denying paternity, public assistance, foster care, lack of custody/visitation, [Father's] shared living expenses, and biased input from the director of domestic relations omitting pertinent information to the trial court?

Did the trial court err in limiting the right established in **Kersey v. Jefferson**[, 791 A.2d 419 (Pa.Super. 2002)] where both prongs of the **Grimes** test were not substantiated for reason employment ended and evidence to a search of comparable wages. **Grimes v. Grimes**, [596 A.2d 240 (Pa.Super. 1991)] and Pa.R.C.P. 1910.16-2(d)(4)?

Did the trial court err in limiting the right established in **Melzer v. Witsberger**[, 505 Pa. 462, 480 A.2d 991 (1984)] and **Babish v. Babish**[, 521 A.2d 955 (Pa.Super. 1987)] that a parent has a right to share in the good fortune with his minor child, when the trial court failed to calculate the resources on record from [Father's] lump sums, frivolous expenses, and unreported change of income?

Did the trial court err in limiting the right established in [**S.T. -E. v. A.T.**, No. 1532 MDA 2017 (Pa.Super. July 16, 2018) (unpublished)] that a deviation should be awarded when a parent does not exercise parental duties when the record shows a need?

Did the trial court err in limiting the right established in **Forry v. Forry**[, 519 A.2d 516 (Pa.Super. 1986)] and **Jaskiewicz v. Jaskiewicz**[, 473 A.2d 183 (Pa.Super. 1984)], when [Mother] stated significant changes?

Did the trial court err in limiting the right established in **Kurts v. Parrish**[, No. W2004-00021-COA-R3-CV (Tenn.

- 6 -

Ct. App. 2004) (unpublished)], when [Father] has made no attempts to maintain a relationship with the children?

Did the trial court err in limiting the right established in *In Re N.P.*[, 2014 Ohio 4087 (Ohio Ct. App. 2014) (unpublished)] pursuant to R.C. 3119.23(A),(G),(H),(J), and (K) when [Father] did not contribute to past health related expenses?

Did the trial court err in limiting the right established in 66 Pa.C.S.[A.] § 332, 231 Pa.Code § 1910.29, and Rule 1910.16-6(A)(3), by permitting irrelevant evidence, lack of physician verification/statement and ineligible tax credit?

Did the trial court err in limiting the right established in *Hoy v. Wheeler*[, No. 1872 EDA 2016 (Pa.Super. Nov. 21, 2017) (unpublished)] pursuant to 23 Pa.C.S.[A.] § 4353(A), 23 Pa. C.S.[A] § 4353(B), and Pa.C.S.[A.] § 4345 when the record lacked an increased wage report by [Father] which resulted in a disproportionate child support order and a decrease of arrears despite previous contempt.

(Mother's Brief at 5-7).

Our standard of review of child support orders is well settled:

When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

*Summers v. Summers*, 35 A.3d 786, 788 (Pa.Super. 2012).

After a thorough review of the certified record, the briefs of the parties, and the relevant law, we conclude the record supports the trial court's analysis of Mother's issues. Consequently, we affirm for the reasons stated in the

opinion entered by the Honorable John J. McNally, III, on February 12, 2021.

Initially, the trial court noted that Mother raised numerous issues in her concise statement of errors that she did not pursue at the *de novo* hearing, constituting waiver. (*See* Trial Court Opinion at 5). Specifically, with respect to Mother's challenges to Father's alleged false testimony, the trial court explained that the court was free, as factfinder, to accept Father's testimony as generally credible. (*See id.* at 5-6). Further, although Mother filed over 100 documents allegedly attacking Father's credibility after the hearing, Mother did not produce any such documents at the *de novo* hearing or attempt to cross-examine Father. (*Id.* at 6). Likewise, Mother's complaints that the Domestic Relations Section director omitted pertinent information was waived where Mother had the opportunity to identify any alleged omitted facts at that hearing but did not do so. (*Id.*)

Regarding Mother's complaint that the court should have held Father to a higher earning capacity, the trial court found Father's testimony, that he lost his job directly as a result of the pandemic, credible. (*Id.* at 7). The court further found that Father made a reasonable effort to obtain appropriate employment as a union electrician and that his decision to obtain employment in this field, which will ultimately yield a higher income, was reasonable. (*Id.*)

With respect to Mother's claim that the court failed to consider Father's luxury car, extra unemployment income and stimulus money when calculating support, the court emphasized that the calculation of support is primarily

determined by Father's monthly net income.[1]  (*Id.*)

Concerning Mother's allegation that the court should have made an upward deviation of 15% to the support calculation because Father does not exercise any period of custody, the court declined to deviate from the amount of support provided for in the guidelines because the record did not support such a deviation.  The court referenced that both parties presented evidence of significant financial difficulties, such that an upward deviation was not warranted.  (*Id.* at 7-8).

The court further pointed out that Mother's reliance on cases and statutes from Ohio were not applicable to the current action.  (*Id.* at 8).  To the extent Mother complains the court over-calculated her income for support purposes, the court noted that Mother did not contest a $250/week earning capacity at the *de novo* hearing.  Moreover, the record supports such an earning capacity by Mother.  (*Id.*)

To the extent Mother complains that the court should have required Father to present a physician verification form to support a reduction in his income, the court noted that Mother waived this claim for failure to raise it at the hearing.  Moreover, Father did not seek a reduction to his assigned income

---

[1] The trial court initially stated that Mother waived these claims by failing to present them at the *de novo* hearing.  (*See id.*)  Our review of the record shows that Mother mentioned Father's lease of an Audi vehicle and speculated that Father probably received a stimulus check as well as unemployment during the pandemic.  Nevertheless, Mother did not provide any evidence at the *de novo* hearing to substantiate her allegations.

based upon a reduced ability to work; rather, he was assigned a net monthly income based on his full-time employment. (*Id.* at 8-9).

Regarding Mother's claim that the court erroneously adjusted her support due to her eligibility for a federal tax credit, the court stated that Mother failed to raise this issue at the hearing or produce any evidence concerning her alleged inability for the credit. Thus, Mother waived this issue. (*Id.* at 9). Similarly, the court noted that Mother failed to raise at the *de novo* hearing Father's alleged failure to report increased wages in 2019. Thus, Mother waived this issue as well. (*Id.*)

Further, Mother failed to explain how the court's reduction in Father's arrearage payment from $75/month to $50/month constituted an abuse of discretion. (*Id.*) On this record, we cannot say the court abused its discretion in denying Mother's request to modify the child support order.[2] ***See Summers, supra***. Accordingly, we affirm based on the trial court's opinion, and direct the parties to attach a copy of the trial court's opinion to future filings involving this appeal.[3]

Order affirmed.

_____

[2] We reiterate that the child support order from which Mother appealed, is effective only from September 1, 2020 to October 6, 2020.

[3] Any additional claims raised in Mother's brief that the trial court did not address in its opinion were not preserved in her concise statement and are waived on appeal. ***See Interest of L.V.***, 209 A.3d 399 (Pa.Super. 2019) (explaining failure to preserve issues in concise statement of errors results in waiver of those claims).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/23/2021

Copies Distributed

Date 2/12/2 Initials SAS

HADASSAH FEINBERG,                    : IN THE COURT OF COMMON PLEAS
                    Plaintiff            : DAUPHIN COUNTY, PENNSYLVANIA
                                         :
          v.                             : NO.  1615 DR 2015
                                         : PACSES 993115627
MIKHAIL KURMANOV,                        :
                    Defendant            : SUPPORT – Appeal

**February 12, 2021**

## MEMORANDUM OPINION

Before the court is the appeal filed by Mother Hadassah Feinberg from an order issued by this Court on December 2, 2020 denying her request that Father Mikhail Kurmanov's child support obligation be increased. This opinion is written in support of the order, pursuant to Pa.R.A.P. 1925(a).

## Background

Father to Mother are the parents of two children, A.F. and E.A.F., ages five and four, respectively. In addition, Mother has another child, E.F., age seven, from another relationship and currently provides emergency foster care for an infant. All four children live with Mother. The proceeding at issue on Mother's appeal involves child support for A.F only. This Court takes judicial notice of the most recent custody order involving A.F., entered May 21, 2019, under which terms the parties agreed Mother would be granted sole legal and physical custody of A.F.[1] Father's paternity of E.A.F. was only established on December 10, 2020, following genetic testing, and his support obligation for E.A.F. is not before this Court.[2]

Mother initially sought child support from Father for A.F. in November 2015 and a support order was later entered May 10, 2016, directing Father pay $496.58 per month plus $49 per month towards arrears.  On September 1, 2020, Father filed a petition with the Domestic Relations Section

---

[1] M.K. v. H.F., No. 2016 CV 4462 CU.
[2] Mother filed a petition on October 7, 2020 seeking child support from Father for E.A.F. After Father's paternity was established, the matter proceeded to an office conference and was resolved with the entry of a child support order for both children on January 4, 2021 (discussed below).

1

DATE FILED 2/12/21
ENTERED BY ___

seeking to decrease child support owed for A.F. Following an office conference, a per curiam Order was issued October 7, 2020, as recommended by the conference officer and effective as of September 1, 2020, directing that Father pay child support of $588 per month plus $75 per month on arrears. At the de novo hearing, the Domestic Relations Section director explained the calculation of support under the Support Guidelines:

> At the conference mother provided a physician's verification form indicating that she was unable to work full time due to medical issues. Mother is working part time. She earns $125 a day and she works about two days a week and that would be a weekly gross of $250 or a monthly net of $958.35. She does receive medical assistance for herself and her other children. And [is] receiving food stamps in the amount of about $457 a month [ ]. … She also stated that she has a daycare cost of $76 per week and a registration fee.

> Father, we had pay stubs for him. He earns $13 an hour, 40 hours a week. That put him at a monthly net of $1,826.06. The combined incomes of the parents came to $2,784.41 or $2800 on the [Support Guidelines] grid for one child which is $658 [per month]. Father's obligation toward just basic support at 65.58 percent would be a support order of $431.52. However, when we average in the daycare, that is what changes this order. Daycare is $76 dollars a week. For a year that is $3,952. Then we had $150 for registration fee for a total of $4,102. After the federal tax credit it's down to $3,052. Monthly $254.33 and Father's obligation would be $166.79. So we have basic support of $431.52 and daycare of $166.79 for a total of $598.31. …

> So the conference officer recommended the $598 a month plus $75 on arrears for one child effective 9/1/20. Plaintiff to provide medical coverage for the child. The uninsured after the first $250 annually is 65 percent father, 35 percent by mother. And the parties shall share the cost of any agreed-upon extracurricular activities for the child in proportion to their respective income. …

> … Father also raised an issue concerning the SSI that his child [A.F.] is receiving. … [M]other does receive $783 per month which was verified by the Department of Public Welfare for help in supporting this child. That is not factored into mother's income or to father's income or to reduce the amount of support that the noncustodial parent would be required to pay [under the Support Guidelines]. It helps for the expenses for the child.

(N.T. 3-5) Mother filed a timely request for de novo review from the October 7, 2020 child support order.

A de novo hearing was held before this Court on December 2, 2020, at which both Mother and Father testified, both as self-represented parties. The relevant record from the de novo hearing was as follows: Mother's primary complaint at the hearing was that Father had voluntarily and intentionally reduced his income from $21.64 plus commissions to $13 an hour by taking a lower paying job. She claimed he should be held to his prior income and earning capacity. (N.T. 6, 9)

Mother also sought an upward deviation of support because Father was not exercising any custody of A.F. and noting that she had spent over $7,000 on his disabilities (primarily autism), has total debt exceeding $80,000, and has her own disabilities and health problems which limit her ability to work. (N.T. 7-8, 22) Mother claimed that Father lives with either his mother or his significant other and thus can split expenses with them. She also asserted that Father drives an Audi that he leases for $700 to $800 per month. (N.T. 8) Mother complained about Father's failure to make support payments between March and July 2020 and asserted that he is in contempt for failure to do so. (N.T. 7, 10)

With regard to employment, the record reflected that Mother is a substitute part-time teacher earning $125 per day and working about two days per week. (N.T. 3, 9) Though Mother testified that she was earning far less than $250 per week, she agreed at the hearing that "I am okay with that amount." (N.T. 10-11) She also testified that upon agreeing to provide foster care, she understood that the infant would not be eligible for childcare with most providers until six weeks of age, thus limiting her ability to work during this time. (N.T. 19)

Father testified that he had worked in sales for a long time before he was let go by his employer in March 2020, directly as a result of the Covid pandemic. (N.T. 15) He received unemployment compensation shortly thereafter. (N.T. 15) Father claimed he looked for other jobs through the summer of 2020 but was unable to find any. He thus decided to become a union electrician after studying for two months and passing an aptitude test. (N.T. 15) Though his starting income is low, he testified that his hourly rate would increase every six months and that in five years he should be making $80,000 per year. (N.T. 17)

Father claimed Mother has sufficient income and resources including SSI, food stamps and free health care for A.F, child support for her oldest child E.F., and a foster care stipend. (N.T. 16)

3

Father suggested that a foster care agency would not give a newborn to a person who is "broke." (N.T. 16, 18-19) Father also testified that he wants to see his son but that Mother has made it difficult for him. (N.T. 16)

Father cited his own financial and health problems, noting that he has irritable bowel syndrome and spends over $3,000 on his prescriptions, without the benefit of free health care. (N.T. 17) The Domestic Relations Section director confirmed that Father submitted documentation at the office conference reflecting his diagnosis and out-of-pocket expenses. (N.T. 18)

At the conclusion of the hearing, this Court denied Mother the relief requested in her demand for a de novo hearing, and re-affirmed the contents of the October 7, 2020 Order, with the exception that the childcare cost portion of the award would be recalculated and reduced to accurately reflect Father's proportionate share of Mother's childcare payments only attributable to A.F., as discussed at the hearing. (See N.T. 12-14, 20-21) As such, the final recalculated Order was issued December 2, 2020, directing that Father pay $506.43 per month plus $50 per month on arrears, for the support of A.F, effective September 1, 2020.

On December 23, 2020, Mother filed a timely appeal from the Court's December 2, 2020 Order. On December 30, 2020, while her appeal was pending, Mother filed a document titled "Notice of Perjury and Contempt." In it, she asserted that Father should be held in contempt for falsely testifying at the de novo hearing. In support, she submitted almost one hundred pages of exhibits "proving the false testimony to be false and intentional." She also requested reconsideration of the December 2, 2020 Order. This Court denied her request for reconsideration.

In the meantime, on January 4, 2020, following a Domestic Relations Section office conference on Mother's petition seeking support for both A.F. and E.A.F., a per curiam Order was entered, as recommended by the conference officer and effective October 7, 2020, increasing Father's child support to $772 per month plus $77 per month on arrears.[3] As such, the child support Order entered in this case from which Mother has appealed, is effective only from September 1, 2020 to October 6, 2020.

---

[3] The parties were assigned the same incomes to calculate support for this Order as were used to calculate the Order from which Mother appeals.

## Legal Discussion

Mother has filed a lengthy, non-concise statement of errors raised on appeal, which this Court has organized into the following: (1) Father repeatedly offered false testimony and statements at the de novo hearing and the Domestic Relations Section director exhibited prejudice towards Mother by omitting pertinent facts at the hearing [Statement Issues 1, 8(a)]; (2) the Court erred by holding Father to his current income instead of assigning him a higher earning capacity [Statement Issue 2]; (3) the Court erred by failing to consider Father's luxury car, extra unemployment income and stimulus monies when calculating support [Statement Issue 3]; (4) the Court erred by failing to make an upward deviation to the support award to account for Father's failure to exercise custody [Statement Issues 4, 5, 6]; (5) the Court erred by failing to apply the child support deviation factors set forth in "R.C. 3119.23 (A), (G), (H) and (K)" [Statement Issue 7]; (6) Mother's income was over-calculated as evidenced by her year-to-date pay [Statement Issue 7(b)]; (7) the Court erred by failing to require that Father present a physician verification form [Statement Issue 8(a)(c)]; (8) the Court improperly assigned Mother the federal tax credit when calculating childcare expenses [Statement Issue 8(a)(d)]; (9) Father failed to report increased wages in 2019 resulting in him underpaying support [Statement Issue 9(a)]; and (10) the Court erred by decreasing Father's monthly arrearage payment [Statement Issue 9(b)].

At the outset, this Court notes that Mother has raised a number of issues in her statement of errors that she failed to raise and pursue at the de novo hearing. "[D]e novo review involves full consideration of the case anew" and as such, "in a hearing de novo, the complainant has the initial burden of going forward with the evidence, as [s]he must prove [her] case as if for the first time." Capuano v. Capuano, 823 A.2d 995, 1003 (2003) (citations omitted). As such, a party must raise an issue and present evidence in support of it if he or she wishes the court to address it, inasmuch as "the very essence of a de novo hearing entails that parties be permitted to present evidence." Id. at 1002. Mother's failure to raise and pursue such issues, identified below, acts as a waiver thereof.

Mother first argues that Father repeatedly offered false testimony and statements at the de novo hearing. A determination of a witness' credibility is one for the factfinder. Miller v. Miller, 744 A.2d 778, 787 (Pa.Super. 1999) (the finder of fact is entitled to weigh the evidence presented and assess its credibility and is free to believe all, part, or none of the evidence). This Court, as factfinder,

determined that Father offered generally credible testimony. Mother produced no record at the de novo hearing raising any significant issues concerning Father's credibility.[4] Mother similarly argues that, during the de novo hearing, when the Domestic Relations Section director introduced the case and recited the factual background and history for the Court's benefit, she revealed prejudice towards Mother by omitting pertinent facts. Mother waived the issue by failing, when she had the opportunity at the de novo hearing, to identify these allegedly omitted facts and offer her own testimony to correct the record.

Mother next argues that the Court erred by holding Father to his current income instead of assigning him a higher earning capacity based upon his former job in sales. Generally, parents have an absolute obligation to support their children and this obligation "must be discharged by the parents even if it causes them some hardship." Mencer v. Ruch, 928 A.2d 294, 297 (Pa. Super. 2007) (citations omitted). Under our rules of civil procedure, "the amount of support to be awarded is based upon the parties' monthly net income." Pa.R.C.P. 1910.16-2. Where, however, "a party willfully fails to obtain appropriate employment, his or her income will be considered to be equal to his or her earning capacity[,]" not equal to his or her actual earnings. Ney v. Ney, 917 A.2d 863, 866 (Pa. Super. 2007) (citation omitted).

The applicable portion of the Support Guidelines addressing earning capacity is as follows:

**Rule 1910.16-2. Support Guidelines. Calculation of Net Income.**

**(d) Reduced or Fluctuating Income.**

\*     \*     \*

(4) *Earning Capacity*. If the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment, the trier of fact may impute to that party an income equal to the party's earning capacity. Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the

---

[4] As noted above, following the de novo hearing, Mother filed a document attacking Father's testimony at the hearing as perjurious. She attached almost one hundred pages of documents in support. None of those documents were presented at the de novo hearing and are not before the Court. In addition, Mother performed no cross-examination of Father at the hearing.

choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).[5]

As set forth above, earning capacity is imputed only "[i]f the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate employment." Id. This Court found Father's testimony, that he lost his job directly as a result of the pandemic, to be credible. Furthermore, this Court also finds that Father made a reasonable effort to obtain appropriate employment as a union electrician and that his decision to obtain employment in a field that initially pays somewhat low, but will in short order pay him significantly more, is eminently reasonable, and in the best interest of A.F. (and E.A.F.).

Mother's third claim on appeal is that the Court erred by failing to consider Father's luxury car, extra unemployment income and stimulus monies when calculating support. The issue of Father's extra unemployment income and stimulus monies was not raised by Mother at the de novo hearing and is thus waived. In any event, Father was employed at the time the petition for modification was filed on September 1, 2020, and as such, any prior unemployment income was irrelevant to the calculation of his support obligation, which is primarily based upon his current net monthly income under the Support Guidelines. That Father allegedly leases a luxury car is similarly irrelevant to the calculation of support, which again, is primarily determined by Father's net monthly income.

In her fourth claim, Mother asserts that the Court erred by failing to make an upward deviation to the support award to account for Father's failure to exercise custody noting that Father has no direct expenditures due to a lack of visitation and Mother presented evidence of excessive debt, medical restrictions that have limited her work, a child with a disability and excessive expenses, and having a third child (E.A.F.) without a support order. At the office conference and at the de novo hearing, Mother suggested that the Court should have directed Father to pay 15% extra to account for his failure to exercise custody. (See N.T. 21-22)

---

[5] The Rules of Civil Procedure, as promulgated by the Supreme Court, have the force of statute. Maddas v. Dehaas, 816 A.2d 234, 238 (Pa. Super. 2003), appeal denied, 827 A.2d 1202 (Pa. 2003).

7

The amount of basic child support due under the Support Guidelines assumes that children spend 30% of their time with the obligor and that the obligor makes direct expenditures on their behalf during that time. See Pa.R.C.P. 1910.16-1 (Explanatory Comment 2010, E. Shared Custody) An Explanatory Comment to Support Guidelines Rule 1910.16-4, notes that a court may make an upward deviation to basic child support in such cases, stating that "[u]pward deviation should be considered in cases in which the obligor has little or no contact with the children." Id. A Court has complete discretion to decide whether to grant an upward deviation. See, Morgan v. Morgan, 99 A.3d 554, 560 (Pa. Super. 2014) (noting that the Comment "only suggests that upward deviation be considered; it does not require it.").

This Court declined to deviate from the amount of child support calculated under the Support Guidelines as the entirety of the record did not support such a deviation. Both parties presented evidence of significant financial difficulties. Mother complained she is not making much income due to numerous issues including her health yet voluntarily chose to foster a child that reduced her ability to earn income for a period of time. Under the totality of this record, an upward deviation was not warranted.

Mother's fifth statement of error is that this Court erred "regarding the right established in Re N.P. establishing that past health related expenses be paid pursuant to R.C. 3119.23 (A), (G), (H) and (K)." It appears that Mother is referring here to Section 3119.23 of the Ohio Revised Code, which addresses the deviation factors applicable to a child support award under Ohio law. Ohio law is not applicable to this action and this Court is unable to identify the case Re N.P.

Mother next argues that her income was over-calculated for the purpose of calculating support due under the Support Guidelines. Mother did not object to her assigned income at the de novo hearing and in fact stated on the record that "I am okay with that amount," referring to the assignment to her of $250 gross income per week. (N.T. 11) In any event, the assignment to Mother of $250 gross per week earning capacity is reasonable on the record before this Court.

In Mother's seventh issue on appeal, Mother appears to claim Court error by failing to require that Father present a physician verification form at the de novo hearing, citing Pa.R.C.P. 1910.29. Rule 1910.29(b) allows a party in a support action to supply, in a record proceeding, a written

8

statement from a physician in lieu of the physician's testimony, where the party is alleging an inability to work or a reduced ability to work and earn income due to a medical condition. See Pa.R.C.P. 1910.29(b) and (c). Mother waived this issue on appeal by failing to raise it at the de novo hearing. In any event, the issue is irrelevant because Father never sought a reduction to his assigned income based upon a reduced ability to work. Instead, he was assigned a net monthly income based upon full time employment.

In her eighth issue, Mother asserts that the calculation of the support obligation was incorrect because she was assigned the federal tax credit "even though she is ineligible to receive it," citing Pa.R.C.P. 1910.16-6(a)). That Rule concerns the adjustment to the basic support amount and allocation of childcare expenses between the parties. It requires that in determining the allocation, that total childcare expenses be reduced to reflect the amount of the federal childcare tax credit available to the eligible party, whether or not the credit is actually claimed. Pa.R.C.P. 1910.16-6(a)(2). The tax may not be used to reduce childcare expenses subject to allocation if the eligible party is not qualified to receive the credit. Pa.R.C.P. 1910.16-6(a)(3). In reciting the background in this case, the Domestic Relations Section director noted that the tax credit was applied to reduce the total amount of childcare expenses to be allocated between the parties. (N.T. 3) Mother failed to raise this issue at the hearing and produce any evidence concerning her alleged ineligibility, and thus waived it.

Mother's ninth issue on appeal is that Father failed to report his increased wages in 2019 resulting in him underpaying support and not being penalized for contempt under 23 Pa.C.S.A. § 4345. Mother did not raise this issue at the de novo hearing and thus waives it.

Finally, Mother argues that this Court erred by decreasing Father's monthly arrearage payment. The Order from which Mother sought de novo review directed that Father pay $75 per month towards arrears and following the de novo hearing, under the Order dated December 2, 2020, he was directed to pay $50 per month towards arrears. A court entering a support order has discretion to set the proper amount of arrears payable. See Karp v. Karp, 686 A.2d 1325, 1329 (Pa. Super. 1996). Mother has not indicated how the reduction in arrearage payments by $25 per month constitutes an abuse of discretion.

9

Accordingly, this Court confirmed all aspects of the child support order issued October 7, 2020, with the exception of the recalculation of day care expenses, as reflected in the Order issued December 2, 2020.

__February 12, 2021__
Date

John J. McNally, III, Judge

10