J-S34044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ASHLEE A. ABROUGUI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HAYKEL ABROUGUI | : | |
| | : | |
| Appellant | : | No. 574 MDA 2025 |

Appeal from the Order Entered March 24, 2025
In the Court of Common Pleas of Union County Domestic Relations
at No. 24-00047, PACSES No. 719302824

BEFORE:  STABILE, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: JANUARY 15, 2026**

Haykel Abrougui (Father) appeals from the order which established his monthly child support obligation for the two children he shares with Ashlee A. Abrougui (Mother).[1]  Upon review, we vacate and remand for further proceedings.

*Factual and Procedural History*

Father and Mother were married in October 2016, and their children were born in June 2018 and December 2019.  The parties separated in 2024. On July 10, 2024, Mother filed for child support.  At the time, Father continued

_____

[1] Although the order also requires Father to pay alimony *pendente lite*, he appeals only from the order of child support.  **See Capuano v. Capuano**, 823 A.2d 995, 998 (Pa. Super. 2003) (reiterating that the portion of an order attributable to child support is final and immediately appealable, but the portion of an order allocated to spousal support is interlocutory).

to reside with Mother in the marital residence and commuted to his job as a general manager of a car dealership in Maryland.

On October 2, 2024, a domestic relations officer (DRO) conducted a telephone conference with the parties and their attorneys. Father had lost his job at the Maryland dealership nine days prior to the conference. Nonetheless, the DRO used Father's earnings to assign him a net earning capacity of $19,314.48 per month.[2] On October 21, 2024, the trial court entered an order adopting the DRO's findings and recommendation that Father pay child support of $2,177.90 per month.[3] On November 6, 2024, Father filed a request for a hearing *de novo*. The trial court held a hearing on January 31, 2025.

Father testified that he has a high school degree and has always worked in the auto industry, doing "anything related to selling cars and management of employees." N.T., 1/31/25, at 5. Prior to the parties' separation, Father was employed as a general manager of a local car dealership. *Id.* at 6, 39. In February 2024, Father had a disagreement with the owner of the local dealership and was terminated. *Id.* at 26, 40.

In April 2024, Father began working as the general manager of the Maryland dealership, which paid less than the local dealership and required a

---

[2] The DHO found that Mother had net earnings of $6,135.98 per month based on Mother's pay statements.

[3] The DHO recommended total monthly support of $4,675.70, which included $2,497.80 in alimony *pendente lite*.

two-and-a-half hour commute. *Id.* at 7-8. Father testified that his gross monthly income at the Maryland dealership was $22,236.67, and his net monthly income was $15,239.53. *Id.* at 33. Father further testified that in September 2024, he was terminated from the Maryland dealership because he declined a transfer to a different location. *Id.* at 8-9. Father stated that the dealership "wanted to transfer me to a different location that[ would make] my commute about an hour more, depends on traffic." *Id.* at 8. Father produced a "Qualifying Separation Determination" dated October 9, 2024, from the Pennsylvania Department of Labor & Industry. *Id.* at 11 (Exhibit 3). The document states that Father was entitled to receive unemployment compensation because he was "discharged" and "not able to meet the employer's job performance standards through no fault of [his] own." *Id.* Father also introduced his unemployment compensation statements showing that he received $605 per week from March to December 2024. *Id.* at 11 (Exhibit 4).

> Father testified that after losing the Maryland job,
>
> I reached out to every dealership out there that I could. I contacted every single relationship that I had in the automobile industry. I have proof that I can submit. I applied for multiple positions.
>
> Unfortunately, the time that I was let go was the end of the year. The economy was bad. The auto industry was completely changed and everybody was conservative about their hires of new staff and their businesses due to the expense and the inflation.

*Id.* at 11-12.

Father described his efforts to find employment as follows:

I started by … reaching out to [my former local employer]. Tried to clear the air with him, see if he can take me back, work for his company. That was going to be the best scenario for me, my kids, and everyone. No one enjoys driv[ing] two and a half hours [to work]. But I was willing to [make] sacrifices, do whatever it takes to maintain what I have and provide for my kids.

So I reached out [next] to W&L[,] which [has] three dealerships, one in Northumberland and two in Shamokin Dam, Mazda[,] I believe[,] and Nissan. They're [a] small family-owned operation. They didn't have any positions. I had multiple text conversations with the owner….

I reached out to Faulkner in Harrisburg. Again, they have a few dealerships in between Harrisburg and Mechanicsburg. No position was available.

I reached out to Fred Beans in Mechanicsburg. No position available. I reached out to Ciocca. Tried to get back to the Muncy area. No response pretty much.

… I even continued to look down in Lancaster. There's a dealership[, a] friend of mine works there. I reached out to Bennett Automotive in Allentown. No position was available. [I was t]rying to think of what else.

I stopped at multiple dealerships. Jim Coleman down in Fairfax, Virginia. I reached out to Premier down in Fairfax, Virginia as well. I reached out to Asbury in Bowie, Maryland. I reached out to Jim Shorkey out in Pittsburgh.

*Id.* at 20-21.

Father testified he was unable to find a job as a general manager. He explained that on January 10, 2025, he began working as a general sales manager, which is "a step below" general manager. *Id.* at 19-20. Father testified that the position was his only option, and that he was earning $2,000

- 4 -

per week plus commission. *Id.* at 19-22. He also stated that his "commissions fluctuate." *Id.* at 33.

Mother testified that she had been employed as a registered nurse auditor since April 2024. *Id.* at 58. In 2024, Mother earned $64,256.66. *Id.* at 59.

After the hearing, the trial court issued an order which stated that its October 21, 2024 order adopting the DHO's recommendation, "is hereby deemed to be and entered as a Final Order." Order, 3/24/25, at 1. The court specifically accepted the DHO's calculation of Father's earning capacity. *Id.* at 1 n.1. The court stated:

> The [c]ourt adopts the [DHO]'s determination of [Father's] earning capacity. The [c]ourt recognizes [Father's] efforts to mitigate the loss of employment with the [local] car dealership with new employment with [the Maryland dealership], albeit at a lower pay scale. While not employed at all at the time of the conference, the determination of earning capacity based on income from his most recent employment (with [the Maryland dealership]) is appropriate.

*Id.*

In addition:

> The [c]ourt decline[d] to remand th[e] matter to the [DHO] for further proceedings based on a claim of change of circumstances following the entry of the [October 2024 o]rder. At a hearing *de novo*, this [c]ourt will consider only the circumstances that existed at the time of the conference. Any subsequent change of circumstances may be addressed by way of a [p]etition to [m]odify.

*Id.*

- 5 -

Father filed a timely notice of appeal and concise statement of errors pursuant to Pa.R.A.P. 1925(a)(2)(i). He presents the following question for review:

> Did the [t]rial [c]ourt err and/or commit an abuse of discretion by entering the [DHO]'s recommendations … as a [f]inal [o]rder dated March 21, 2025, and filed on March 24, 2025, assigning Father with an earning capacity based on an average of his income from prior employment, without considering Father's … receipt of unemployment compensation[,] as well as actions taken to mitigate his income losses by obtaining new employment and actual earnings received[, and] concluding that the [c]ourt could only consider information offered at the time of the [c]onference and not any additional facts that occurred until the time of the [d]e [n]ovo hearing?

Father's Brief at 4.

We review the trial court's order for an abuse of discretion. We have explained:

> When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. We will not interfere with the broad discretion afforded the trial court absent an abuse of discretion or insufficient evidence to sustain the support order. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused.

***Sichelstiel v. Sichelstiel***, 272 A.3d 530, 534 (Pa. Super. 2022) (quoting ***Silver v. Pinskey***, 981 A.2d 284, 291 (Pa. Super. 2009) (*en banc*)). "A support order will not be disturbed on appeal unless the trial court failed to consider properly the requirements of the Rules of Civil Procedure governing

actions for support, Pa.R.Civ.P.1910.1 *et seq.,* or abused its discretion in applying these Rules." ***Christianson v. Ely***, 838 A.2d 630, 634 (Pa. 2003) (citation omitted). Upon review, we are constrained to find that the trial court misapplied the law pertaining to Father's income and earning capacity.

In calculating a party's income available for child support, the factfinder shall deduct specific items from gross income – *e.g.*, federal, state, and local income taxes; F.I.C.A. payments; and non-voluntary retirement payments. ***See*** Pa.R.Civ.P. 1910.16-2(c)(1). When calculating income for an initial order, the trier-of-fact may impute an earning capacity to the party "if a party willfully fails to obtain or maintain appropriate employment." Pa.R.Civ.P. 1910.16-2(d)(4)(i).

With regard to modification of a support order,

> if a party voluntarily accepts a lower paying job, there generally will be no effect on the support obligation. A party may not voluntarily reduce his or her income in an attempt to circumvent his support obligation. Where a parent is fired for cause, however, the court can consider reducing the parent's child support obligation under Rule 1910.16(2)(d)(1) if the parent establishes that he or she attempted to mitigate lost income.

***Grigoruk v. Grigoruk***, 912 A.2d 311, 313 (Pa. Super. 2006) (citations omitted). The trier-of-fact "shall adjust a party's income" when the reduction is involuntary and "due to an employment situation over which the party has no control, including, but not limited to, … termination." Pa.R.Civ.P. 1910.16-2(d)(2)(i).

With respect to earning capacity, the factfinder must consider the party's age, education, training, health, work experience, and earnings history. ***See Portugal v. Portugal,*** 798 A.2d 246, 250 (Pa. Super. 2002). "A person's earning capacity is defined not as an amount which the person could theoretically earn, but the amount which the person could realistically earn under the circumstances, considering his or her age, health, mental and physical condition and training." ***Gephart v. Gephart***, 764 A.2d 613, 615 (Pa. Super 2000). Past earnings alone are not sufficient to support a determination of earning capacity without corroborating evidence that the party still has the capacity to earn that amount. ***Conner v. Conner***, 217 A.3d 301, 314 (Pa. Super. 2019) (citing ***D.H. v. R.H.***, 900 A.2d 922 (Pa. Super. 2006) (holding that the trial court erred in determining earning capacity based solely on the party's most recent tax return)).

Father argues that the trial court erred in adopting the DHO's determination of his earning capacity and failing to consider the evidence presented at the *de novo* hearing.[4] He states:

> Father … was awarded unemployment compensation [after losing his job in Maryland], and he immediately took all steps and efforts to obtain alternate employment, which he was able to obtain. The [t]rial [c]ourt adopted the [DHO]'s [o]rder…, and therefore, in setting an earning capacity for Father, did not … take into consideration Father's unemployment compensation earnings or efforts in obtaining alternate employment[,] or Father's new actual earnings from his new employer…. Instead, the trial court tries to incorrectly rely on the unpublished Superior Court case of ***Zimmerman v. Kegel***, [276 A.3d 259 (Pa. Super. filed Mar. 25,

_____

[4] Mother has not filed an appellate brief.

2022) (unpublished memorandum)], to support the trial court's position that the [c]ourt could only consider the facts and circumstances that existed at the time of the [c]onference[,] and not anything that occurred thereafter until the time of the [*d*]e [*n*]*ovo* hearing. However, the case of **Capuano v. Capuano**, 823 A.2d 995, 1003 (Pa. Super. 2003) clearly stands for the proposition that [a *d*]e [*n*]*ovo* hearing requires "full consideration of the case anew, [where] parties must be permitted to present evidence in support of their respective positions," and [the] fail[ure] to do so [is] reversible error.

*Id.* at 17-18.

Father concludes that the trial court's disregard of the evidence and reliance on the DHO's recommendation constituted an abuse of discretion and misapplication of the law. *Id.* at 18. We agree.

The parties adhered to the following procedure governing support actions:

Following the conference, the conference officer makes a recommendation to the trial court even if the parties did not reach an agreement. The trial court will then enter an interim order of support without hearing the parties. Rule 1910.11(f). The order shall inform the parties of their right to seek a *de novo* hearing before a trial court. *See id.*; 1910.11(i). Rule 1910.11 contains further provisions regarding the *de novo* hearing:

(i) If a demand is filed, there shall be a hearing *de novo* before the court.

**Capuano**, 823 A.2d at 1000. "The Rules contemplate the presentation of evidence at a *de novo* hearing" and "the parties must be permitted to present evidence in support of their respective positions." *Id.* at 1001, 1003. "Rule 1910.11(i) provides that at such hearing, '[t]he **court shall hear the case and enter a final order.**'" *Id.* at 1001 (emphasis in original).

In particular:

"*De novo*" review entails, as the term suggests, full consideration of the case anew. The reviewing body is in effect substituted for the prior decision maker and redecides the case. ***D'Arciprete v. D'Arciprete***, 470 A.2d 995, 996 (Pa. Super. 1984) (quoting ***Commonwealth v. Gussey***, 466 A.2d 219, 222 (Pa. Super. 1983)). In ***Warner*** [***v. Pollock***, 644 A.2d 747 (Pa. Super. 1994)], this Court stated that under Rule 1910.11[,] "one demands a hearing, one does not file an appeal." ***Id.*** at 750. The Court emphasized the differences between an appeal and a hearing *de novo*, explaining an appeal deals with an assertion of specific error whereas a *de novo* hearing is a full reconsideration of the case.

***Id.*** at 1003 (citing ***Rebert v. Rebert***, 757 A.2d 981, 984 (Pa. Super. 2000)).

This Court has held that "under Pa.R.Civ.P. 1910.11[,] a litigant has an absolute right to his/her day in court should it be desired[, and] that hearing shall be *de novo* **and not limited in scope**." ***Warner***, 644 A.2d at 751 (emphasis added). "The reviewing body is in effect substituted for the prior decision maker and redecides the case." ***Id.*** at 750 (citations omitted). "Once one of the parties demand[s] a [*de novo*] hearing, each would be entitled to litigate as if it were the first proceeding." ***Id.*** It is the "sole province and the responsibility of the court to set an award of support." ***Ewing v. Ewing***, 843 A.2d 1282, 1286 (Pa. Super. 2004) (citation omitted). It is well-settled that when the trial court is the factfinder, it weighs the evidence and assesses credibility. ***See Morgan v. Morgan***, 99 A.3d 554, 559 (Pa. Super. 2014).

In this case, the trial court heard the evidence, "but made its decision based on the circumstances as they existed at the time of the support conference." Trial Court Opinion (TCO), 5/16/25, at 3 (unnumbered). As

Father points out, the court relies on a non-precedential decision in stating "that the plain language of Rule 1910.11 does not require the trial court to consider changes in a party['s] income after the conference officer makes his or her support calculation recommendation to the trial court." *Id.* at 4 (citing *Zimmerman v. Kegel*, *supra*[5]). Upon review, we conclude that the trial court erred by disregarding the evidence and adopting the DHO's determination regarding Father's earning capacity.

The Rules of Civil Procedure provide for the calculation of a party's net monthly income in an initial support matter. A party's monthly gross income "is ordinarily based on at least a six-month average of a party's income." Pa.R.Civ.P. 1910.16-2(a). The Rules specifically address earning capacity in the context of an initial order:

> (4) *Earning Capacity--Initial Orders.*
>
> (i) When calculating an initial order, **if a party willfully fails to obtain or maintain appropriate employment**, the trier-of-fact may impute to the party an income equal to the party's earning capacity.
>
> > (A) Earning Capacity Limitation. The trier-of-fact:
> >
> > (I) shall not impute to the party an earning capacity that exceeds the amount the party could earn from one full-time position; and
> >
> > (II) shall determine a reasonable work regimen based upon the party's relevant circumstances, including the jobs available within a particular occupation, working hours and

---

[5] Pursuant to Pa.R.A.P. 126(b), this Court's non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value.

conditions, and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.Civ.P. 1910.16-2(d)(4)(i) (emphasis added).

Here, the record lacks evidence of Father "willfully fail[ing] to obtain or maintain appropriate employment." *Id.* It is undisputed that prior to the parties' separation, the local dealership terminated Father. Shortly after, and around the time of the parties' separation, Father obtained a similar job, although it paid less and required him to commute to Maryland. The Maryland dealership terminated Father after he declined to transfer to a location that would require an even further commute. The DHO acknowledged that Father was terminated by both dealerships. *See* Recommendation at 2. However, in assigning Father's earning capacity, it appears that the DHO disregarded Rule 1910.16-2(d)(4), and improperly applied Rule 1910.16-2(d)(1).

Rule 1910.16-2(d)(1) and (2) apply to the modification of existing orders. These Rules distinguish between voluntary and involuntary income reduction as follows:

**(d) Reduced Income or Fluctuating Earnings.**

(1) *Voluntary Income Reduction--Existing Orders*. The trier-of-fact shall not downwardly adjust a party's net income from an existing order if the trier-of-fact finds that:

(i) the party's income reduction resulted from the party willfully attempting to favorably affect the party's basic support obligation; or

(ii) the party voluntarily assumed a lower paying job, quit a job, left employment, changed occupations, changed employment status to pursue an education, or employment is terminated due to willful misconduct.

> (2) *Involuntary Income Reduction. Incarceration. Earnings Fluctuations--Existing Orders.*
>
> (i) Involuntary Income Reduction. The trier-of-fact shall adjust a party's monthly net income from an existing order for substantial continuing involuntary decreases in income due to an employment situation over which the party has no control, including, but not limited to, illness, lay-off, termination, or job elimination.

Pa.R.Civ.P. 1910.16-2(d).

> This Court has explained:
>
> It is well settled that "to modify a support obligation based upon reduced income, a petitioner must first establish that the voluntary change in employment which resulted in a reduction of income was not made for the purpose of avoiding a child support obligation and secondly, that a reduction in support is warranted based on petitioner's efforts to mitigate any income loss."

***Kersey v. Jefferson***, 791 A.2d 419, 423 (Pa. Super. 2002) (citation omitted). When a party seeks to modify support and the change in employment was involuntary, the trier-of-fact "shall adjust" a party's income. Pa.R.Civ.P. 1910.16-2(d)(2)(i).

Here, the trial court and DHO focused on Father mitigating the reduction in his income, which would be relevant if this was a modification action. However, this action involves an initial support order, where the proper inquiry for imputing an earning capacity is whether Father willfully failed to obtain or maintain appropriate employment. Pa.R.Civ.P. 1910.16-2(d)(4). As the record does not support a finding that Father willfully failed to obtain or maintain appropriate employment, the trial court erred in adopting the DHO's determination of his earning capacity. Accordingly, we vacate the portion of

the order pertaining to child support, and remand for the trial court's "full consideration of the case anew," and recalculation of Father's income consistent with the evidence and applicable legal authority.[6] **Warner**, 644 A.2d at 750.

Order pertaining to child support vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/15/2026

---

[6] The trial court shall not act until the record is remitted and its jurisdiction is restored. **See Bell v. Kater**, 839 A.2d 356, 358 (Pa. Super. 2003) (finding that the trial court's order was a legal nullity because it was entered prior to remand of the record when the trial court lacked jurisdiction).